Joseph F. KULWICKI, III and Judith Ann Kulwicki, his wife

v.

John M. DAWSON, Appellant at No. 91–3358.

Jack L. Loutzenhiser and Robert J. Mullen, Appellants at No. 91–3394

and

The City of Meadville, a Municipal Corporation, and Crawford County, a Municipal Corporation.

Nos. 91–3358, 91–3394.

United States Court of Appeals, Third Circuit.

Argued Dec. 12, 1991.

Decided July 2, 1992.

Sean J. McLaughlin, Richard A. Lanzillo (argued), Knox McLaughlin Gornall & Sennett, P.C., Erie, Pa., for appellant John M. Dawson.

John W. Jordan, IV (argued), Thomas P. McGinnes, Grigsby, Gaca & Davies, P.C., Pittsburg, Pa., for appellants Jack L. Loutzenhiser and Robert J. Mullen; City of Meadville.

James A. Wood, Israel & Wood, Pittsburgh, Pa., for Crawford County.

Stanley M. Stein (argued), Thomas P. McDermott, Feldstein Grinberg Stein & McKee, Pittsburgh, Pa., for appellees Joseph F. Kulwicki, III and Judith Ann Kulwicki.

Before SLOVITER, Chief Judge, SCIRICA and ROTH, Circuit Judges.

OPINION OF THE COURT

ROTH, Circuit Judge.

Appellants Dawson, Loutzenhiser and Mullen challenge the district court's denial

of their individual claims of official immunity. Dawson is the District Attorney for Crawford County, Pennsylvania. Loutzenhiser and Mullen are both employed by the City of Meadville Police Department, Loutzenhiser as a Detective Sergeant and Mullen as the Chief of Police.

Appellee Kulwicki, a local attorney, brought suit against the three men under 42 U.S.C. § 1983, alleging that they conspired to deprive him of constitutional rights when they unsuccessfully charged him in the fall of 1988 with criminal conspiracy and attempt to deal in infant children.[1] *See* 18 Pa. Cons.Stat.Ann. §§ 903, 901(4305) (1983). Kulwicki alleges he suffered additional constitutional affront from the appellants' solicitation of false witness testimony in support of the charges, false testimony at trial, and publication of the criminal charges in the local media.

Dawson filed a motion to dismiss and/or for summary judgment under Fed.R.Civ.P. 12(b)(6), raising the defense of absolute immunity.[2] Appellants Loutzenhiser and Mullen submitted motions to dismiss under Fed.R.Civ.P. 12(b)(6), asserting qualified immunity. The trial court denied each of their claims. We will affirm in part and reverse in part.

## I.

### Procedural History

Kulwicki's claims arise out of an unsuccessful criminal prosecution against him in Pennsylvania state court, based upon his alleged role in a conspiracy to deal in infant children. He was charged with criminal conspiracy to deal in infant children on October 13, 1988, and with an attempt to deal in infant children on December 19, 1988. On May 19, 1989, after a five-day jury trial, a jury acquitted Kulwicki of the criminal charges. The jury deliberated for less than one hour before coming to its verdict. *Commonwealth v. Joseph F. Kulwicki, III*, Crim. No. 1988–674 (C.P. of Crawford County) (1988).

After he was acquitted, Kulwicki initiated the present action in federal district court. His amended complaint sets forth ten separate violations of federal and state law:

1. "[D]eliberate and total indifference to [Kulwicki's] Constitutional rights," in violation of 42 U.S.C. § 1983;

2. Malicious prosecution under the laws of the Commonwealth of Pennsylvania;

3. Intentional infliction of emotional distress;

4. Defamation;

5. Loss of income, earnings and earning capacity;

6. "[W]illful, wanton, and oppressive" actions deserving of punitive damages;

7. Conspiracy to deprive [Kulwicki] of his "right to freedom from unlawful arrest," in violation of 42 U.S.C. § 1983;

8. State law negligence against two municipal defendants;[3]

9. By Kulwicki's wife, a loss of consortium; and

10. A request for attorney's fees under 42 U.S.C. §§ 1983 and 1988.

Dawson filed a motion to dismiss and/or for summary judgment. Loutzenhiser and Mullen each filed motions to dismiss. All alleged, *inter alia*, official immunity from suit. Dawson claimed absolute immunity as a prosecutor; Loutzenhiser and Mullen, as public officials, raised the defense of qualified immunity. With the permission of the court, all three defendants submitted

---

1. Both Kulwicki and his wife are appellees in this action. We refer to them jointly as "Kulwicki."

2. Though Dawson raises the issue of qualified immunity in his brief to this court, he does not appear to have pressed this argument before the district court, and we therefore do not address the issue.

3. Kulwicki named the City of Meadville and Crawford County as additional defendants in this action. Both defendants filed motions to dismiss in response to his complaint. Kulwicki was permitted to file an amended complaint against Crawford County, but the trial judge granted the County's renewed motion to dismiss, and Kulwicki does not challenge that ruling on appeal. The trial judge denied the City's motion to dismiss, and denied the City's certification for interlocutory appeal under 28 U.S.C. § 1292(b). Thus, neither the City nor the County is a party to this appeal.

supplementary materials in support of their motions. The trial judge, ruling as on motions to dismiss, denied the motions on May 22, 1991. *Kulwicki v. Dawson*, No. 90–127 (W.D.Pa. May 22, 1991) (mem. op.). Each official filed a timely notice of appeal, and the appeals were consolidated by an order of this court dated June 25, 1991.

## II.

### Factual Background

The following statement of facts is taken from the complaint and its attachments. Dawson and Kulwicki are Pennsylvania attorneys and long-time political rivals. Dawson, a Republican, is the District Attorney for Crawford County, Pennsylvania. Kulwicki has been the Democratic nominee for the District Attorney position in the past.

At the time criminal charges were filed against Kulwicki, he was facilitating the adoption of a baby girl for two clients, John and Christine Gustafson. In short, Kulwicki initiated formal adoption proceedings on behalf of the Gustafsons, but while the paperwork was being completed, the natural mother, Jill Marvin, was arrested for trying to sell her child to another couple. Kulwicki was charged soon after Marvin's arrest.

According to the complaint, Marvin's child was conceived of a rape. During her pregnancy, Marvin decided to give the baby up for adoption. Her doctor contacted the Gustafsons regarding possible adoption, and the Gustafsons called Kulwicki for legal advice. Marvin gave birth to a daughter on September 7, 1988. The following day, Kulwicki and the Gustafsons met with Marvin in the hospital to discuss the adoption. No expenses were mentioned in the initial meeting. Afterward, Marvin's doctor phoned Kulwicki and suggested, allegedly in the interest of speeding the adoption, that the Gustafsons offer to pay some of Marvin's hospital expenses. With Kulwicki as a mediator, the Gustafsons agreed to pay Marvin $5,000, contingent upon court approval of the adoption. On September 9, 1988, Marvin signed a form temporarily releasing custody of the child, and

the Gustafsons took possession of the child. Kulwicki then discussed the adoption with an attorney at the local Children and Youth Service Agency, filed an adoptors' report with the state Orphans' Court, and paid a $200 adoption investigation fee to the Crawford County Court of Common Pleas. He also made an appearance before the Court of Common Pleas to request an advisory opinion on acceleration of the adoption proceedings.

On September 26, 1988, Marvin demanded the return of her child. Apparently, she had negotiated with another couple, the Ferraros, to exchange the baby for a fee of $7,000. Marvin and the Ferraros planned to conceal this transaction from the court. The Gustafsons relinquished custody of the child on September 27, 1988.

On September 28, according to Kulwicki, the Gustafsons complained to Dawson and/or a member of his staff about Marvin's treatment of her child. They alleged that the child was removed from their custody for improper purposes. Thereafter, Marvin was arrested and charged with attempting to deal in infant children, and the Gustafsons, under a grant of immunity, underwent intensive interrogation by members of Dawson's office about their dealings with Marvin and Kulwicki.

Dawson's interrogation of the Gustafsons allegedly centered on Kulwicki. Dawson told the Gustafsons that Kulwicki had engaged in criminal behavior regarding the adoption; he advised them to discharge Kulwicki as their attorney, and to obtain new counsel. Finally, he told them that he intended to prosecute Kulwicki criminally. Loutzenhiser allegedly participated in the interrogation. Neither Dawson nor Loutzenhiser made a report of the questioning. The Gustafsons subsequently terminated their relationship with Kulwicki.

Dawson then advised Loutzenhiser to conduct an investigation into Kulwicki's handling of the Gustafson adoption. Loutzenhiser interviewed Kulwicki, but did not keep a log of the discussion. According to Kulwicki, Loutzenhiser did not interview Marvin, nor did he discuss the Marvin adop-

tion with the Court of Common Pleas or the Child and Youth Service Agency, both of whom Kulwicki had involved in the Gustafson proceedings. Nonetheless, on October 13, 1988, Loutzenhiser filed a criminal complaint against Kulwicki for conspiring to deal in infant children.

The following day, allegedly before Kulwicki had been served with the complaint, Loutzenhiser and/or Dawson caused the publication of the criminal charges in morning newspapers up to 40 miles away. Loutzenhiser, allegedly at Dawson's direction, held a press conference in order to comment on the charges against Kulwicki. As a result, a description of the charges was broadcast on the 5 p.m. news by a local radio station, and later by two regional television stations. The local newspaper refused Kulwicki's request to file a rebuttal.

On October 13, the day the criminal complaint was filed, Dawson recused himself from Kulwicki's prosecution. Dawson alleged that he wanted to "avoid any appearance of bias or prejudice" against Kulwicki, and so secured the appointment of a special prosecutor, Linda Barr, from a neighboring District Attorney's office. Soon after Barr's appointment, Loutzenhiser filed a second criminal complaint against Kulwicki, charging him with the attempt to deal in infant children. Despite the additional complaint, however, Barr decided to file a motion to withdraw all pending charges against Kulwicki on May 8, 1989. She apparently published her decision in the local paper on May 10, 1989, five days before the scheduled start of Kulwicki's trial.

Loutzenhiser spotted the article and contacted Dawson, who then prepared a letter to Barr regarding a confession Kulwicki had allegedly made to Dawson before Kulwicki's arrest the previous October. The letter stated that, in a conversation with Dawson in early October, 1988, Kulwicki had confessed to violating the Pennsylvania provision prohibiting dealing in infant children. Though Barr allegedly did not receive Dawson's letter until May 15, on May 11 she decided not to file a motion to

withdraw charges against Kulwicki. Her decision was, again, published in the local newspaper. Dawson's report of the alleged "confession" did not surface prior to May 15, 1989, despite regular correspondence between Barr and Dawson's office from the date of her appointment seven months earlier.

Kulwicki's trial began on May 15. Dawson and Loutzenhiser testified for the Government. The jury acquitted Kulwicki of both charges, after less than one hour of deliberations.

### III.

### A.

#### Jurisdiction

■ Kulwicki challenges this court's appellate jurisdiction over the district court's denial of official immunity. Under the law of this circuit, his challenge must fail.

The "collateral order" doctrine of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) provides an immediate appeal where an order "conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and is effectively unreviewable on appeal from a final judgment." *Nixon v. Fitzgerald*, 457 U.S. 731, 742, 102 S.Ct. 2690, 2697, 73 L.Ed.2d 349 (1982). The appeal must also present a "serious and unsettled" question. *Id.* (citing *Cohen*, 337 U.S. at 547, 69 S.Ct. at 1226).

Orders denying claims of absolute immunity are appealable under the *Cohen* criteria. Official immunity represents the right not to stand trial, an entitlement which is lost if the official cannot appeal until the merits of the dispute are resolved. *See Nixon*, 457 U.S. at 742, 102 S.Ct. at 2697 (claim of Presidential immunity); *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (claim of immunity under the Speech and Debate Clause); *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (claim of immunity under Double Jeopardy Clause); *Schrob v.*

*Catterson,* 948 F.2d 1402, 1406–07 (3d Cir. 1991) (claim of prosecutorial immunity).[4]

In *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court extended the right of immediate appeal to denials of qualified immunity, "to the extent that [they] turn[ ] on an issue of law." *Id.* at 530, 105 S.Ct. at 2817. Without clarifying the meaning of the quoted phrase, however, the Court announced that "the denial of a defendant's motion for dismissal or summary judgment on the ground of qualified immunity *easily meets*" the *Cohen* requirements. *Mitchell,* 472 U.S. at 527, 105 S.Ct. at 2816 (emphasis added).[5]

■ Kulwicki seizes upon the "issue of law" language in *Mitchell,* and asserts that a denial of immunity does not satisfy this standard where there are disputed facts about the official's behavior. We reject his assertion on two grounds.

Initially, such a narrow reading of *Mitchell* is not the law of this circuit. In *Schrob v. Catterson, supra,* which we decided on a motion to dismiss, we asserted jurisdiction over the district court's denial of absolute and qualified immunity under the *Cohen* doctrine, despite unresolved factual issues about the officials' behavior. *Schrob,* 948 F.2d at 1407 (panel asserted jurisdiction over all immunity claims, then remanded for further factual development of qualified immunity issues). *See Brown v. Grabowski,* 922 F.2d 1097, 1105 (3d Cir.1990) (permitting immediate appeal from a decision denying qualified immunity), *cert. denied, sub nom. Roselle v. Brown,* — U.S. ——, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). Our jurisdiction to hear immunity

appeals is limited only where the district court does not address the immunity question below, or where the court does not base its decision on immunity per se. *See Brown v. United States,* 851 F.2d 615, 620 (3d Cir.1988) (though the Court of Appeals had the power to hear and decide the qualified immunity issue, jurisdiction was "inappropriate" where the district court had not ruled upon the question).[6]

The Supreme Court's decisions in *Mitchell* and *Nixon* and our own circuit precedent in *Schrob* provide that orders denying immunity are immediately appealable. Insofar as there may be issues of material fact present in a case on appeal, we would have to look at those facts in the light most favorable to the non-moving party. Further qualification of the right to appeal under Kulwicki's theory would unnecessarily force us to engage in a review of the merits simply to determine jurisdiction.

Secondly, even if unresolved issues of fact were relevant to appellate jurisdiction over an immunity appeal, which we do not hold, such issues would only be relevant when immunity has been decided on a motion for summary judgment, not on a motion to dismiss. In fact, it is quite likely that factual issues relevant to immunity will not have been developed at the 12(b)(6) stage. The court's duty at the 12(b)(6) stage of the proceedings is only to construe the *presented* facts in the light most favorable to the plaintiff. Where the presented facts fail to make out a case for protection, official immunity is denied. That further facts may surface to produce a contrary result on motions for summary judgment does not deprive the court's earlier decision

---

**4.** Unlike Kulwicki's claim against a local official under 42 U.S.C. § 1983, *Schrob* involved a *Bivens* action against a federal official. *Schrob* is still apposite, however, because courts apply common immunity standards to these two types of claims. *See Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909–10, 57 L.Ed.2d 895 (1978); *Schrob,* 948 F.2d at 1409.

**5.** The Court did not distinguish, for purposes of appealability, between motions to dismiss and motions for summary judgment. However, it is generally understood that *Mitchell* contemplates

appeals from denials of immunity at either or both of these stages in civil rights proceedings. *See Fry v. Melaragno,* 939 F.2d 832, 835 n. 5 (9th Cir.1991); *Kennedy v. Cleveland,* 797 F.2d 297, 299 (6th Cir.1986), *cert. denied, sub nom. Hanton v. Kennedy,* 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987).

**6.** The panel in *Brown* also felt that, apart from the issue of jurisdiction, the record was insufficient to gauge the availability of qualified immunity. *Id.* at 619–20.

of its finality under *Cohen*.[7]

We recognize that the Courts of Appeals do not take a uniform view of appellate jurisdiction over denials of immunity. Yet, as one court notes wryly, different treatment of jurisdiction does not have great effect on the outcome of the appeal. *Peppers v. Coates*, 887 F.2d 1493, 1496–97 n. 7 (11th Cir.1989).[8] Our holding in *Schrob* is consistent with decisions in the First and District of Columbia Circuits, that do not make factual resolution a prerequisite of appellate jurisdiction. *See Krohn v. United States*, 742 F.2d 24, 28–29 (1st Cir.1984) ("we accept jurisdiction at the outset"); *McSurely v. McClellan*, 697 F.2d 309, 316 (D.C.Cir.1982). By contrast, the Second, Fifth, and Eleventh Circuits decline appellate jurisdiction where factual issues regarding an official's immunity claim remain. *See Feagley v. Waddill*, 868 F.2d 1437 (5th Cir.1989); *Peppers*, 887 F.2d at 1496 (no appellate jurisdiction over a denial of summary judgment where plaintiff raises a sufficient question of fact about immunity defense); *Lawson v. Abrams*, 863 F.2d 260, 263 (2d Cir.1988) (no appellate jurisdiction over an order permitting the filing of an amended complaint, where the plaintiff's claims against the defendant prosecutor "d[id] not clearly reveal the degree to which the conduct relied on could be considered part of the decision to prosecute or ... purely investigative[.]"). *See also Evans v. Dillahunty*, 711 F.2d 828, 830 (8th Cir.1983) (advocating a "practical, rather than a technical, approach:" denials of motions to dismiss or motions for summary judgment premised on immunity are only immediately appealable where 1) the essential facts are not in dispute, and 2) the determination of whether the government official is entitled to immunity is solely a question of law).

We find our decision in *Schrob* to be most pertinent to this case. *Schrob* directly addressed the availability of appellate jurisdiction over the denial of a motion to dismiss. The *Schrob* panel assumed jurisdiction over the district court's order denying immunity, adopting the basic approach taken in *Mitchell* and *Nixon*. We thus find that, where a motion to dismiss is denied on the basis of immunity, we have jurisdiction to hear the appeal. Accordingly, we assert jurisdiction over the district court's order denying immunity for Kulwicki's federal claims.[9]

### B.

### *Standard of Review*

Our review of the legal issue of official immunity is plenary. *Capone v. Marinelli*, 868 F.2d 102 (3d Cir.1989). The federal district court ruled on the appellants' immunity claims in the context of denying their motions to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

---

7. We note that an appeal from a denial of immunity where factual issues remain is distinct from that where the defendant official denies taking the actions at issue. Unlike a claim of official immunity, the "I didn't do it" defense relates strictly to the merits of the plaintiff's claim, and is therefore not immediately appealable. *See Chinchello v. Fenton*, 805 F.2d 126, 131 (3d Cir.1986). *See also Stoneking v. Bradford Area School District*, 856 F.2d 594, 604 (3d Cir.1988), *vacated on other grounds*, 489 U.S. 1062, 109 S.Ct. 1333, 103 L.Ed.2d 804 (1989).

8. The court points out:
 On the one hand, the appellate court assumes jurisdiction if defendant has legitimately claimed qualified immunity, and affirms the trial court's order denying such claim if plaintiff raises a genuine issue as to defendant's commission of acts in violation of plaintiff's clearly established rights. On the other hand, the appellate court dismisses the appeal if

plaintiff has uncovered facts creating a genuine issue regarding defendant's commission of acts in violation of plaintiff's clearly established rights.
*Peppers*, 887 F.2d at 1497 n. 7.

9. Our jurisdiction to review the district court's denial of immunity on Kulwicki's pendent state claims rests on the treatment of denials of immunity under Pennsylvania law. *See Grabowski*, 922 F.2d at 1106–07. As we noted in *Grabowski*, the immediate appealability of decisions denying immunity turns on whether Pennsylvania immunizes its officials from suit as well as from liability. *Id.* at 1107. This requires analysis of Pennsylvania statutory language and case law. The district court did not address the state law immunity issue. We decline to perform a *Grabowski* analysis to determine the appealability of the district court's denial where that court did not address the availability of immunity from Kulwicki's state law claims.

This decision was based solely on the complaint, despite the admission of additional materials—an affidavit of Special Prosecutor Barr, and selected excerpts of the transcript of Kulwicki's criminal trial—into the record. Appellants argue that the admission of extra materials effectively converted their motions to dismiss into motions for summary judgment. They assert that this court must view all evidence accepted into the record, as if the motion were one for summary judgment. Kulwicki maintains that this court is limited to the complaint under Rule 12(b)(6), as this was the basis for the judge's decision.[10]

Certainly, the standard of review under Rule 12(b)(6) is more favorable to plaintiffs seeking to circumvent official immunity. *See* 6 Moore's Federal Practice ¶ 56.02[3], at 56–27 n. 16 (1991–1992 Supp.). On review of a motion to dismiss for failure to state a claim, we look only to the complaint to see whether there is any set of facts plaintiff can prove that would support a denial of immunity. *See Robb v. Philadelphia*, 733 F.2d 286 (3d Cir.1984). All allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom. *Schrob*, 948 F.2d at 1405. By comparison, review of a summary judgment motion seeks to determine whether, viewing the evidence in the light favorable to the non-movant, no genuine issue of material fact about immunity remains for trial. *See Hancock Industries v. Schaeffer*, 811 F.2d 225 (3d Cir.1987).

A trial judge has the discretion to consider evidence outside the complaint in ruling on motions to dismiss. 5A Wright & Miller, Federal Practice and Procedure § 1366, at 491 (1990). Generally, however, "if matters outside the pleadings are presented to the district court on a motion under Rules 12(b)(6) or 12(c), and the court does not exclude them, the motion must be considered as one under Rule 56 and determined in accordance with summary judgment principles." 6 Moore's Federal Practice ¶ 56.02[3], at 56–27 (1991) (footnotes omitted). *See Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam) (where matters outside the pleadings are "presented and not excluded by the court," motion to dismiss should be treated as one for summary judgment); *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir.1991) (trial court properly converted motion to dismiss to one for summary judgment where matters outside the pleadings were considered and plaintiff was afforded the opportunity to present evidence).

Where a district court explicitly confines its ruling to the complaint, however, our review is as under a motion to dismiss, even where additional materials were admitted into the record. *E.E.O.C. v. Reno*, 758 F.2d 581, 583 n. 6 (11th Cir.1985) ("The lower court's order makes clear that the judge ruled only on the motion to dismiss, and we treat the case as being in that posture."); *Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413, 414 (5th Cir. 1980) (appellate review was limited to the allegations in the complaint where "the express wording of the Order for Dismissal affirmatively indicate[d] that the district court did not consider the extra-pleading matters.")

In this case, the trial judge expressly limited his ruling to the face of the complaint, mem. op. at 1458, despite granting the Appellants' earlier requests to file supplemental materials. Thus, our review is premised on Rule 12(b)(6), and we are limited to the contents of the complaint and any attached exhibits. In this endeavor, we are concerned neither with the accuracy of the facts alleged nor the adequacy of Kulwicki's underlying claim, *Mitchell*, 472 U.S. at 528, 105 S.Ct. at 2816–17; our only duty is to construe the facts in the manner most favorable to Kulwicki, in order to determine whether the official behavior he de-

---

**10.** This position was less clear in oral argument, where both parties referred to materials outside the pleadings.

scribes falls outside the cloak of official immunity.[11]

# IV.

## Discussion

Kulwicki challenges Dawson's 1) initiation of the prosecution, 2) interview with the Gustafsons, 3) communications with the media, 4) submission of the "confession" letter to Barr, and 5) testimony at trial. Kulwicki criticizes Loutzenhiser for four of the same five reasons: 1) for filing criminal charges, 2) reporting the charges to the media, 3) collaborating with Dawson on the alleged "confession" letter, and 4) testifying at trial. We take up each challenge below.

## A.

### Claims Against Dawson

1. Malicious Prosecution

■ Kulwicki claims that Dawson initiated criminal charges against him for purely political motives. Dawson contends that he initiated the criminal proceedings in his role as a prosecutor, and is therefore absolutely immune from suit.

■ Prosecutors are subject to varying levels of official immunity. Absolute immunity attaches to all actions performed in a "quasi-judicial" role. *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976). This includes activity taken while in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior "intimately associated with the judicial phases" of litigation. *See id.; Fry,* 939 F.2d at 838 (activity occurring as part of presentation of evidence is absolutely protected). By contrast, a prosecutor acting in an investigative or administrative capacity is protected only by qualified immunity.

*Imbler,* 424 U.S. at 430–31, 96 S.Ct. at 994–96; *Burns v. Reed,* —— U.S. ——, 111 S.Ct. 1934, 1938 n. 2, 114 L.Ed.2d 547 (1991). In addition, there may be instances where a prosecutor's behavior falls completely outside the prosecutorial role. *See Rose v. Bartle,* 871 F.2d 331, 346 (3d Cir.1989). In that case, no absolute immunity is available.

■ In determining whether absolute immunity is available for particular actions, the courts engage in a "functional" analysis of each alleged activity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 811, 102 S.Ct. 2727, 2734, 73 L.Ed.2d 396 (1982); *Rose,* 871 F.2d at 343. Three factors determine whether a government official should be given absolute immunity for a particular function: 1) whether there is "a historical or common law basis for the immunity in question;" 2) whether performance of the function poses a risk of harassment or vexatious litigation against the official; and 3) whether there exist alternatives to damage suits against the official as means of redressing wrongful conduct. *Mitchell,* 472 U.S. at 521–22, 105 S.Ct. at 2812–13. *See Burns,* 111 S.Ct. at 1938; *Fry,* 939 F.2d at 836 n. 6.

■ Where absolute immunity does not apply, qualified immunity protects official action, if the officer's behavior was "objectively reasonable" in light of the constitutional rights affected. *Grabowski,* 922 F.2d at 1109; *Schrob,* 948 F.2d at 1421. Objective reasonableness is measured by the amount of knowledge available to the officer at the time of the alleged violation. *See Grabowski,* 922 F.2d at 1111.

■ The decision to initiate a prosecution is at the core of a prosecutor's judicial role. *Imbler,* 424 U.S. at 430–31, 96 S.Ct.

---

11. As noted above in footnote 10 and the surrounding text, both parties urged extra-complaint materials on this court at oral argument. Though the district court accepted these materials, its decision was framed as on a motion to dismiss under Fed.R.Civ.P. 12(b)(6). While we recognize that the decision to convert a motion to dismiss to a motion for summary judgment is generally committed to the district court's discretion under Fed.R.Civ.P. 56, in a situation such as the present one, where the court agrees to the submission of materials outside the complaint and actually extends the time for filing such materials, it would appear that, unless there are strong countervailing considerations, judicial efficiency would be promoted if the court were to decide the officials' motions as if on summary judgment rather than as on a motion to dismiss.

at 994–96. *See Rose,* 871 F.2d at 343. A prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred. *See Rose,* 871 F.2d at 347 n. 12; *Joseph v. Patterson,* 795 F.2d 549, 557 (6th Cir.1986), *cert. denied,* 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987). Harm to a falsely-charged defendant is remedied by safeguards built into the judicial system—probable cause hearings, dismissal of the charges—and into the state codes of professional responsibility. *Burns,* 111 S.Ct. at 1939, 1942.

Some courts have refused to grant immunity to prosecutors who initiate charges for purely personal motives. *E.g., Beard v. Udall,* 648 F.2d 1264 (9th Cir.1981) (prosecutor had client's wife's ex-husband (Beard) jailed in child custody dispute between prosecutor's client and Beard over Beard's children); *Mines v. Kahle,* 557 F.Supp. 1030 (W.D.Pa.1983) (prosecutor who files a criminal complaint in capacity as a private attorney is not entitled to absolute immunity; denial affirmed until further factual inquiry complete). These courts hold that personal animus takes the action outside the prosecutorial role. *Mines,* 557 F.Supp. at 1034, citing *Bauers v. Heisel,* 361 F.2d 581, 591 (3d Cir.1966) ("[R]eason requires us to adopt a rule which does not provide immunity for those acts which are done clearly outside the authority or jurisdiction of the office."), *cert. denied,* 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967).

In this case, Kulwicki alleges that Dawson had charges brought against him because Kulwicki was Dawson's political rival. Dawson allegedly knew that Kulwicki's management of the Marvin baby did not amount to a conspiracy or an attempt to deal in infant children, yet he directed Detective Loutzenhiser to file the baseless charges. Citing *Beard v. Udall,* the district court denied Dawson's absolute immunity claim on the ground that malicious prosecution may fall outside a prosecutor's judicial role.

Consideration of personal motives is directly at odds with the Supreme Court's simple functional analysis of prosecutorial immunity, however.[12] The Court has explicitly stated that even groundless charges are protected, in the interest of maintaining vigorous prosecution of crime. *See Imbler,* 424 U.S. at 427–28, 96 S.Ct. at 993–94. Moreover, *Beard v. Udall* was explicitly overruled by an *en banc* panel of the Court of Appeals for the Ninth Circuit. *See Ashelman v. Pope,* 793 F.2d 1072, 1077–78 (9th Cir.1986) (en banc). In *Ashelman,* the court stated that immunity should not be affected by the motives with which a prosecutor's acts are performed. *Id.* at 1077. Our sister court in the Fifth Circuit has reached a similar conclusion. *See Brummett v. Camble,* 946 F.2d 1178, 1181 (5th Cir.1991) ("absolute immunity is justified and defined by the governmental functions it protects and serves, not by the motives with which a particular officer performs those functions.") (citation omitted).

Functionally, Dawson's actions are absolutely immune. Dawson was performing a core prosecutorial function in causing Loutzenhiser to file criminal charges against Kulwicki. As noted above, malicious prosecution was given immunity at common law. *See Burns,* 111 S.Ct. at 1938. Admittedly, the facts are not above suspicion: the conspiracy charge was filed on October 13, and Dawson recused himself from the case later that day. Yet, the Supreme Court has made clear that "the relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.'" *Mireles v. Waco,* —— U.S. ——, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991). The district court's denial of Dawson's claim of absolute immunity for initiating Kulwicki's prosecution will be reversed, and that particular claim remanded to the district court with instructions that it be dismissed.

2. Witness Interviews

■ Absolute immunity for prosecutorial activity is not limited to the initiation of

---

**12.** Notably, motive is also irrelevant in the qualified immunity analysis. There the emphasis is on the objective reasonableness of the official's

behavior. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987).

a lawsuit. The Supreme Court has recognized that "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of prosecution and actions apart from the courtroom." *Imbler*, 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33. Immunity extends to "the preparation necessary to present a case," and this includes the "obtaining, reviewing, and evaluation of evidence." *Schrob*, 948 F.2d at 1414, citing *Imbler*, 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33. *See Forsyth v. Kleindienst*, 599 F.2d 1203, 1215 (3d Cir.1979) ("[T]o the extent that the securing of information is necessary to a prosecutor's decision to initiate a criminal prosecution, it is encompassed within the protected, quasi-judicial immunity afforded to the decision itself."), *cert. denied, sub nom. Mitchell v. Forsyth*, 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981).

Yet, as the Supreme Court recently noted, the "cases do not extend absolute immunity to all officers who engage in necessary official acts." *Hafer v. Melo*, — U.S. —, 112 S.Ct. 358, 363, 116 L.Ed.2d 301 (1991). Rather, "officials seeking absolute immunity must show that such immunity is justified for the governmental function at issue." *Id.* (citation omitted). The functions of the prosecutor encompass activities protected by both absolute and qualified immunity. *Imbler* at 430–31, 96 S.Ct. at 994–96. The extension of only qualified immunity to some prosecutorial roles should not unduly stifle the operation of that office, however. The "presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns*, 111 S.Ct. at 1939.

To give examples of prosecutorial activities protected by absolute, as opposed to qualified, immunity, soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings is absolutely protected. *Id.* at 1939, 1941.

Use of the false testimony in connection with the prosecution is absolutely protected. *See id.* at 1939 (eliciting false or defamatory statements from witnesses in a judicial proceeding was immunized at common law). Even interviews generating evidence to be presented to a grand jury are absolutely protected. *Rose*, 871 F.2d at 344 (prosecutor's solicitation of testimony for use in grand jury proceedings is "encompassed within 'the preparation necessary to present a case' and therefore [is] immunized as involving the prosecutors' advocacy functions.") (citation omitted).

■ Merely investigative evidence-gathering is not absolutely protected, however, and in that instance an officer must meet the "objective reasonableness" standard of qualified immunity to be relieved of suit. *See Burns*, 111 S.Ct. at 1943; *Rose*, 871 F.2d at 343.

The line between quasi-judicial and investigative activity is far from clear. Some courts look to the occurrence of the activity relative to the filing of the complaint. *See Schrob*, 948 F.2d at 1415 (collecting cases). Evidence gleaned prior to the filing is deemed investigative. Certain pre-filing interactions with the police are "investigative," such as directing evidence-gathering, *see Joseph*, 795 F.2d at 556 (citing *Imbler*), or giving probable cause advice, *Burns*, 111 S.Ct. at 1944–45. *See also Rose*, 871 F.2d at 344 (panel recognized, without providing examples, that "there may well be situations in which the allegations establish that the solicitation or coercion of false statements from a witness occurred while the prosecutor was acting in an investigative capacity."). Evidence obtained at or after the filing is likely to be connected with an existing prosecution, and is absolutely protected. *E.g. Hunt v. Jaglowski*, 926 F.2d 689, 693 (7th Cir.1991) (prosecutor is absolutely protected when approving or disapproving charges sought by police).[13]

---

**13.** For an approach to the dividing line between absolute and qualified immunity based on the impact of the court rather than the actions of the prosecutor, see *Millspaugh v. County Dept. of Public Welfare*, 937 F.2d 1172, 1175–77 (7th Cir.1991) (absolute immunity appropriate where there "would be no loss but for the judge's acts" in response to information provided by prosecutors and witnesses; qualified immunity adequate where actions "could cause injury without mediation of judge").

Though we do not view the filing of a complaint as a foolproof measure of the commencement of "quasi-judicial" activity, this court has implicitly acknowledged the importance in that determination of an existing cause of action. In *Schrob, supra*, we analyzed a prosecutor's application for a seizure warrant under the forfeiture provision of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 881(a)(6)–(7) (1981 and Supp.1991). Though no complaint had been filed, the decision to seek a warrant under the Act was absolutely protected, because under that provision "[t]he prosecutor is not gathering evidence . . . , *but has already decided to bring an action* for forfeiture against the guilty property." *Schrob*, 948 F.2d at 1416 (emphasis added).

In this case, the Gustafsons were questioned about their dealings with Kulwicki and the Jill Marvin baby on September 30, 1988. Dawson or his staff conducted the interview after the Gustafsons contacted the office about the flip-flopping custody of the baby. During the interview, Dawson's staff questioned them closely about Kulwicki. The Gustafsons were also told that Dawson intended to prosecute Kulwicki criminally. No official records of the discussion with the Gustafsons were made. Kulwicki alleges that the information obtained from the interview was used to manufacture evidence of criminality and to criminally prosecute him.

The facts in Kulwicki's complaint raise a question about whether Dawson, or his staff acting at his direction, acted in a quasi-judicial role at the time of the Gustafson interview. The criminal complaint charging Kulwicki with conspiracy to deal in infant children was not filed until October 13, 1988, two weeks after the Gustafson conference. Thus, if we were to view the filing of the complaint as dispositive, the interview would be merely investigative

and not absolutely protected. Moreover, the complaint alleges that the *Gustafsons* initiated contact with the District Attorney's office, to complain about *Jill Marvin* and not about Kulwicki. These factors point away from purely prosecutorial activity.

On the other hand, Kulwicki reports that the Gustafson interview was about him and his representation of the Gustafsons. Dawson mentioned that he intended to press charges against Kulwicki. This supports Dawson's argument that the questioning was conducted as part of the decision to prosecute Kulwicki.

The complaint on its face points more convincingly to "investigation" than to "prosecution." This characterization may prove less apt as more facts come to light. However, based upon the facts alleged in the complaint alone, we will affirm the trial court's denial of absolute immunity in regard to the conduct of the witness interviews.

### 3. Media Contact

■ Kulwicki alleges that Dawson caused the publication of criminal charges against him before he was served with process. As further alleged harm, Loutzenhiser held a press conference on the matter later the same day. Both measures resulted in Kulwicki's "defamation." [14]

Communication with the press is not core prosecutorial activity. As this court has noted on two occasions, "[t]alking to the press is, at best, only an administrative function," *Schrob*, 948 F.2d at 1420; *Helstoski v. Goldstein*, 552 F.2d 564, 566 (3d Cir.1977), subject solely to qualified immunity. Leaks to *other parties* sometimes warrant absolute protection, if the divulgence occurred in a quasi-judicial role. *See Rose*, 871 F.2d at 346. However, that issue is not before us. We are faced only with the publication of criminal charges to the

---

**14.** From the face of the complaint, the media communication did not violate anything other than Kulwicki's reputation. *E.g.*, Complaint ¶ 49 ("the Defendants further publically [sic] defamed [Kulwicki] [by the publication] . . ."); Complaint ¶ 54 (the "press conferences and radio and television broadcasts so defamed [Kul-

wicki]" that the local paper would not print a rebuttal); Complaint Exhibit P (letter from Kulwicki to Loutzenhiser dated the date of the publication) ("because of the damages, humiliation, and embarrassment you have caused both me and my family").

local press. On the issue of media communication, therefore, we will affirm the district court's denial of absolute prosecutorial immunity.[15]

### 4. Manufacturing False Evidence

 A prosecutor has immunity for both the use and solicitation of evidence in connection with a prosecution. *See Burns,* 111 S.Ct. at 1939; *Schrob,* 948 F.2d at 1417 ("Prosecutors and other lawyers were absolutely immune at common law for making false or defamatory statements in judicial proceedings."). Witnesses who testify falsely at trial are similarly protected. *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

Kulwicki alleges that Dawson fabricated a confession and submitted it to Special Prosecutor Barr in order to keep Kulwicki's prosecution alive. Barr had allegedly decided to withdraw the charges against Kulwicki before she received the memorandum. Unquestionably, Dawson's submission of false evidence would be absolutely immune under *Burns* and *Schrob* if he were prosecuting the case himself. However, Dawson was no longer assigned to the case when the memorandum was submitted. The memorandum was not generated until five days before Kulwicki's trial, which was over seven months after

Dawson's recusal from the case. Dawson had no official control over Kulwicki's prosecution in May 1989, and was thus not acting in his prosecutorial role. Clearly, then, the district court was correct in concluding that Dawson's submission of the confession fell outside his quasi-judicial function as a prosecutor.

 We need not decide the availability of immunity in this instance, however, because Dawson does not offer an immunity defense for his submission of the "fabricated" confession. He addresses only the merits of his action, focusing on the alleged truthfulness of the memorandum's contents. Denial of a motion to dismiss on the merits of a plaintiff's claim is not a final appealable decision under *Cohen, supra.* As a result, Dawson's liability for the alleged confession is not appropriately before this court.[16]

### B.

### *Qualified Immunity for the Police*

Kulwicki alleges that Detective Loutzenhiser is liable for participating with Dawson in initiating the prosecution, eliciting false testimony from witnesses, publishing criminal charges, and testifying falsely in several judicial proceedings.

Loutzenhiser, as a police officer, is only entitled to qualified immunity. *Anderson*

---

**15.** Though we cannot address the merits of a § 1983 claim on this interlocutory appeal, we note that a defamation claim does not present a case for § 1983 relief. *See Siegert v. Gilley,* — U.S. ——, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991); *Paul v. Davis,* 424 U.S. 693, 708–09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976).

**16.** We note that Dawson's actual testimony at trial is absolutely protected under *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). In *Briscoe,* the Court granted absolute immunity to two police officers who testified falsely at the petitioners' trial, concluding that "§ 1983 does not allow recovery of damages against a private party for testimony in a judicial proceeding." 460 U.S. at 329, 103 S.Ct. at 1112. This court extended such protection to pre-trial proceedings in *Williams v. Hepting,* 844 F.2d, 138, 140–41 (3d Cir.) (*Briscoe* applies to testimony given in preliminary hearings), *cert. denied,* 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988).

Some courts have pointed out the tension between the Supreme Court's sweeping protec-

tion of all witness testimony in *Briscoe,* and the common law distinction, noted in *Malley v. Briggs,* 475 U.S. 335, 340–41, 106 S.Ct. 1092, 1095–96, 89 L.Ed.2d 271 (1986), between lay witnesses (absolutely protected) and complaining witnesses in malicious prosecution suits (not absolutely protected). *See Anthony v. Baker,* 955 F.2d 1395, 1401 (10th Cir.1992) (though immunity exists for lay witnesses, there is no immunity for knowing false statements made by a complaining witness in a grand jury proceeding); *White v. Frank,* 855 F.2d 956 (2d Cir.1988) (same). In fact, this court has been criticized for failing to emphasize the distinction. *See White,* 855 F.2d at 961, citing this court's opinion in *Williams v. Hepting, supra.*

In *Malley,* the Supreme Court noted, in the context of rejecting immunity for a police officer's baseless application for an arrest warrant, that complaining witnesses were not afforded immunity at common law. The Court was not addressing the issue of testimony at trial, as it did in *Briscoe.* We decline to interpret the language in *Malley* as overriding the broad witness protection announced in *Briscoe.*

---

*v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). He is immune if he acted reasonably with respect to Kulwicki's constitutional rights, or if he did not violate clearly established law. *See Grabowski,* 922 F.2d at 1109; *Schrob,* 948 F.2d at 1421.

▇ In this case, it would have been unreasonable to file criminal charges without objective evidence of probable cause. *See Losch v. Parkesburg,* 736 F.2d 903, 907 (3d Cir.1984). Kulwicki alleges that Loutzenhiser proceeded on manufactured or coerced evidence, that the charges were filed without a proper investigation of the law of adoption, and without discussion with the natural mother. Accepting the allegations in the complaint as true, Loutzenhiser's behavior appears unreasonable.

Our determination of the "objective reasonableness" of the charges is inhibited, however. Loutzenhiser's knowledge at the time the charges were filed, a crucial element of qualified immunity, is not apparent from the complaint. Consequently, as to the charge of malicious prosecution, the district court was correct in denying Loutzenhiser's motion to dismiss on the basis of qualified immunity. *See Schrob,* 948 F.2d at 1421 (affirming district court's denial of qualified immunity where the case was "better decided on summary judgment" because "supplementation of the record was necessary").

▇ As to the issue of media communication, however, we find that Loutzenhiser is entitled to qualified immunity because Kulwicki fails to allege a violation of clearly established federal law. There is no federal constitutional right to reputation, *Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991); *Paul v. Davis,* 424 U.S. 693, 708–09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976); and

violations of state law, including defamation, are insufficient to state a claim under § 1983. *Rose,* 871 F.2d at 347. To the extent that Kulwicki was "defamed" by the media publication, therefore, he does not allege a violation of clearly established federal law. As to this claim, we will reverse the district court's denial of qualified immunity.[17]

## V.

### Conclusion

▇ For the foregoing reasons, we will reverse the district court's order as to Dawson's absolute prosecutorial immunity for initiating Kulwicki's prosecution, and as to Loutzenhiser's communications with the press, and we will affirm the court's denial of the Appellants' remaining immunity claims.[18]

---

**17.** The district court did not address Kulwicki's allegations that Loutzenhiser gave false testimony at several points in Kulwicki's criminal trial. We will simply note, as we did with Dawson, that the charge is unsupportable. *See Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

**18.** The denial of Officer Mullen's claim is not an appealable collateral order under *Cohen, supra.*

His appeal is not grounded in a theory of immunity. Rather, he denies liability on the merits of Kulwicki's claims, by alleging no responsibility or knowledge of Dawson's and Loutzenhiser's actions. Official immunity is available as a defense where responsibility for the claimed actions is *admitted.* Where official action is not admitted, as in Mullen's case, immunity is not relevant.