**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1906
_____

ESTATE OF SUZANNE BARDZELL,
Appellant

v.

JESSICA GOMPERTS, In her official representative and individual capacity;
BERGEN COUNTY PROSECUTORS OFFICE;
ABC CORPORATIONS AND PUBLIC ENTITIES 1-5,
Fictitious name intending to designate the entity or entities responsible for causing
Plaintiff's cause of action and injuries;
ABC CORPORATION OR ENTITIES, DIRECTORS, OFFICERS,
SERVANTS, AGENTS AND/OR EMPLOYEES, JOHN/JANE DOE(S) 1-10
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-20-cv-04555)
U.S. District Judge: Honorable Kevin McNulty
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 24, 2022
_____

Before: HARDIMAN, SHWARTZ, and FUENTES, <u>Circuit Judges</u>.

(Filed: March 22, 2022)
_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

The Estate of Suzanne Bardzell (the "Estate") brings state-created danger claims

against Assistant Bergen County Prosecutor Jessica Gomperts, among others, arising

from Suzanne Bardzell's murder by her domestic abuser. Because Gomperts' alleged

actions were all prosecutorial in nature, she is entitled to absolute prosecutorial immunity.

As a result, we will affirm the District Court's order dismissing the claims against her.

I

A

Bardzell dated Arthur Lomando, a former New York City police officer with a

history of mental illness. After their relationship ended, Lomando began stalking and

harassing Bardzell. Specifically, several weeks before her murder, Lomando broke into

Bardzell's home, woke her, held scissors to her neck, and threatened to kill her. Bardzell

reported the incident to the Midland Park Police Department ("MPP"). MPP discovered

a "Be On the Look Out" notice reporting Lomando as a missing person who escaped

from a New York mental hospital. MPP relayed this information to Gomperts, who

chose not to initiate a prosecution against Lomando.[1] Gomperts explained to MPP that,

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] The Estate alleges that Gomperts "ordered MPP to release Lomando from custody immediately," SA19 ¶ 72, but the Estate does not allege when MPP took Lomando into custody.

2

"basically[,] there was no case, as it was [Bardzell's] word against Lomando's word." SA19 ¶ 73. Gomperts also caused MPP to refuse to allow Bardzell to sign a citizen criminal complaint against Lomando for second-degree burglary, instead only allowing a third-degree charge.

Bardzell obtained a Temporary Restraining Order ("TRO") against Lomando. Lomando violated the TRO on several occasions by, for example, calling Bardzell's friend and sending photographs to Bardzell's employer. MPP informed Gomperts of Lomando's conduct, but Gomperts again declined to bring criminal charges against Lomando. The Teaneck Police Department arrested Lomando for these TRO violations, but Lomando posted bail and was released. MPP then sent out an alert instructing county police officers to apprehend Lomando as a "missing person . . . possibly armed with a handgun," leading Lomando to turn himself in. SA26 ¶ 103. Gomperts again declined to bring criminal charges against Lomando, and Lomando was again released.

Weeks later, Lomando murdered Bardzell.

B

The Estate sued, among others, Gomperts, in her official and individual capacities, alleging substantive due process claims under the state-created danger theory in violation of 42 U.S.C. § 1983 and N.J.S.A. §§ 10:6-1, 10:6-2. Gomperts moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

The District Court granted the motion to dismiss, holding that: (1) Gomperts, in her official capacity, was entitled to sovereign immunity under the Eleventh Amendment,

3

Est. of Bardzell v. Gomperts, 515 F. Supp. 3d 256, 269 (D.N.J. 2021); and (2) Gomperts, in her personal capacity, was entitled to prosecutorial immunity, id. at 277, because her decisions not to investigate, prosecute, restrain, or approve a citizen complaint containing a second-degree charge against Lomando were discretionary, quasi-judicial decisions protected by absolute immunity, id. at 270-71, 273-77.

The District Court denied the Estate's motion for reconsideration, holding that: (1) the Court of Appeals for the Third Circuit has rejected the Estate's proposed "bright-line" approach, which seeks to differentiate between pre-charge and post-charge activities for the purposes of determining whether the prosecutor's action is entitled to prosecutorial immunity, Est. of Bardzell v. Gomperts, No. 20-CV-4555-KM-ESK, 2021 WL 1573844, at *2 (D.N.J. Apr. 22, 2021); (2) the complaint's allegations demonstrated that Gomperts' actions were protected by prosecutorial immunity, id. at *5-6; and (3) because binding caselaw holds that "a prosecutor's subjective motivation is irrelevant to determining the application of" immunity, id. at *3, 5-7 (citing Kulwicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992)), Gomperts' alleged bad faith does not impact her immunity.

The Estate appeals.[2]

---

[2] The Estate mentions the Eleventh Amendment sovereign immunity ruling in one sentence in its opening brief, stating that "Eleventh Amendment sovereign immunity and absolute prosecutorial immunity raise factual issues that cannot be conclusively determined on the pleadings." Appellant Br. at 25. Because the Estate raises the Eleventh Amendment only in passing, its challenge to the District Court's Eleventh Amendment ruling is forfeited. See Fed. Trade Comm'n v. AbbVie Inc., 976 F.3d 327, 368 n.3 (3d Cir. 2020) ("[A]rguments raised in passing . . . but not squarely argued, are

## II[3]

### A

A prosecutor is absolutely "immune from a civil suit for damages" for "activities [] intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976). To determine whether a prosecutor's activities are intimately associated with the judicial phase of the criminal process, "courts engage in a 'functional' analysis of each alleged activity," Kulwicki, 969 F.2d at 1463, in which they "focus upon the functional nature of the activities rather than [the prosecutor's] status to determine whether absolute immunity is warranted," Fogle v. Sokol, 957 F.3d 148, 159 (3d Cir. 2020) (quotations marks omitted).

Applying this functional approach, courts have concluded that a prosecutor enjoys

---

forfeited on appeal." (quotation marks omitted)), cert. denied sub nom. AbbVie Inc. v. Fed. Trade Commm'n, 141 S. Ct. 2838 (2021).

[3] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's order granting the motion to dismiss on immunity grounds is plenary. Odd v. Malone, 538 F.3d 202, 207 (3d Cir. 2008); see also Kulwicki, 969 F.2d at 1461 ("Our review of the legal issue of official immunity is plenary."). We "apply the same standard as the District Court, accepting as true the factual allegations in the complaint[,] and drawing all reasonable inferences in favor of [the Estate]." Odd, 538 F.3d at 207. A "uniquely heavy" burden is on the prosecutor to demonstrate absolute immunity, as the prosecutor is subject to a "more challenging standard of review than would apply on summary judgment" because on a "motion to dismiss, it is the [prosecutor]'s conduct as alleged in the complaint that is scrutinized." Fogle v. Sokol, 957 F.3d 148, 160-61 (3d Cir. 2020) (internal quotation marks and alterations omitted). This means that "to earn the protections of absolute immunity, [the prosecutor] must show that the conduct triggering absolute immunity clearly appears on the face of the complaint." Id. at 161 (internal quotation marks and alterations omitted).

absolute immunity for "all actions performed in a quasi-judicial role," Kulwicki, 969 F.2d at 1463 (quotation marks omitted), such as "initiating a prosecution," Imbler, 424 U.S. at 431, "soliciting . . . testimony from witnesses in grand jury proceedings and probable cause hearings," Kulwicki, 969 F.2d at 1465, presenting evidence to a judge, Burns v. Reed, 500 U.S. 478, 479, 491-92 (1991), and conducting a trial, Imbler, 424 U.S. at 431; see also Fogle, 957 F.3d at 159 ("Th[e] functional test separates advocacy from everything else[.]").  Conversely, there may be circumstances in which a prosecutor may not enjoy absolute immunity, such as when addressing "workplace hiring, payroll administration, the maintenance of physical facilities," Van de Kamp v. Goldstein, 555 U.S. 335, 344 (2009), or making statements to the press, Buckley v. Fitzsimmons, 509 U.S. 259, 277 (1993).  "[W]hile it is tempting to derive bright-line rules from [precedent], we have cautioned against such categorical reasoning to preserve the fact-based nature of the inquiry."  Fogle, 957 F.3d at 160 (alteration adopted) (quotation marks omitted); see also Odd v. Malone, 538 F.3d 202, 210 (3d Cir. 2008) (rejecting "bright-line rules that would treat the timing of the prosecutor's action (e.g. pre- or post[-]indictment), or its location (i.e. in- or out-of-court), as dispositive").

Here, the Estate argues that Gomperts engaged in three activities that are not shielded by absolute prosecutorial immunity: (1) "provid[ing] legal advice" and guidance to the police, Appellant Br. at 20; (2) "reviewing evidence during the course of an ongoing investigation," Appellant Br. at 21; and (3) "showing favoritism, bias, and deliberate indifference to ongoing domestic violence," Appellant Br. at 23.  We will

6

address each activity in turn.

B

"The decision [whether] to initiate a prosecution is at the core of a prosecutor's judicial role." Kulwicki, 969 F.2d at 1463-64 (citing Imbler, 424 U.S. at 430-31). The Estate contends that Gomperts "ordered/instructed [the police] to take no police action whatsoever against Lomando" and allowed him to be released because Gomperts felt that "basically there was no case, as it was [Bardzell's] word against Lomando's word." SA19 ¶¶ 73-75. Gomperts' instructions, however, arose from her decision not to initiate a criminal prosecution against Lomando. They were thus "fairly within [Gomperts'] function as an advocate," Imbler, 424 U.S. at 431 n.32, and covered by absolute immunity.

Gomperts' announcement to the police that she would not initiate a criminal prosecution differs from situations where prosecutors advise investigators about the collection of evidence during an investigation. See, e.g., Burns, 500 U.S. at 492-94 (advice to use hypnosis); Fogle, 957 F.3d at 160 (same); Rieves v. Town of Smyrna, 959 F.3d 678, 692 (6th Cir. 2020) (instruction to raid cannabidiol stores). Those situations involve "search[ing] for the clues and corroboration that might give [an investigator] probable cause to recommend . . . arrest[]." Rieves, 959 F.3d at 691. Gomperts was not searching for clues and corroboration nor advising the police on how they should collect evidence or otherwise conduct their investigation. Rather, Gomperts evaluated the evidence presented and made a decision concerning whether to initiate a prosecution.

7

Because Gomperts was engaged in a core prosecutorial function, she is absolutely immune from suit. See Kulwicki, 969 F.2d at 1463-64.

C

The Estate argues that "Gomperts was not acting as an advocate in preparation for trial, but rather was engaging in activities more often associated with police, e.g., reviewing evidence during the course [of] an ongoing investigation." Appellant Br. at 21. Contrary to the Estate's position, these activities are also subject to absolute immunity.

Absolute prosecutorial immunity shields more than just the decision to initiate a criminal prosecution. Kulwicki, 969 F.2d at 1464-65 ("Absolute immunity for prosecutorial activity is not limited to the initiation of a lawsuit . . . [as] 'the duties of the prosecutor in his role as advocate . . . involve actions preliminary to the initiation of prosecution and actions apart from the courtroom.'" (quoting Imbler, 424 U.S. at 431 n.33)). Absolute immunity can "extend[] to the preparation necessary to present a case, and this [can] include[ ] . . . obtaining, reviewing, and evaluat[ing ] . . . evidence." Id. at 1465 (quotation marks omitted); see Van de Kamp, 555 U.S. at 344 (alleged failure to maintain a system for collecting informant impeachment materials is absolutely immune because it is a task "directly connected with the conduct of a trial," as it "require[s] legal knowledge and the exercise of related discretion"); Buckley, 509 U.S. at 273 (evaluating evidence and interviewing witnesses for trial is immune from suit).[4]

---

[4] See also Weimer v. Cnty. of Fayette, 972 F.3d 177, 189-90 (3d Cir. 2020) (holding that absolute immunity did not apply to a prosecutor's "alleged involvement at

8

Here, Gomperts' evaluation of potential trial evidence warrants absolute immunity. The complaint alleges that police informed Gomperts of the facts of the attack and the evidence to prove it. Gomperts decided that "basically there was no case, as it was [Bardzell's] word against Lomando's word," SA19 ¶ 73. Because Gomperts was evaluating the evidence and evaluating evidence is necessary to decide whether charges can be brought, evidence evaluation is an activity entitled to absolutely immunity.[5]

D

The Estate's argument that Gomperts is not entitled to absolute immunity for her actions because she "show[ed] favoritism, bias, and deliberate indifference to ongoing domestic violence," and "deliberately protect[ed] a domestic abuser," Appellant Br. at 19, 23, also fails.

"A prosecutor is absolutely immune when making th[e] decision [whether to initiate a prosecution], even where he acts without [] good faith." Kulwicki, 969 F.2d at

_____

the crime scene on the morning of [a] murder, nor [to] her investigation into statements by [witnesses]").

[5] The Estate relies on Buckley but it is distinguishable. In Buckley, the Court concluded that the prosecutors were not "absolute[ly] immun[e] for . . . conspir[ing] to manufacture false evidence that would link [the petitioner's] boot with the bootprint the murderer left on the front door." 509 U.S. at 272. The Court explained that the prosecutors' "mission at that time was entirely investigative in character," as they did not have "probable cause to arrest [the] petitioner" and were instead "function[ing] . . . [as] detective[s]" to build a case. Id. at 273-74. Here, the challenged activity is Gomperts' evaluation of evidence after an investigation conducted by others, not the manufacture of evidence during an investigation.

9

1464.[6]  This is because "[c]onsideration of personal motives is directly at odds with the Supreme Court's simple functional analysis of prosecutorial immunity." Id.  Therefore, even if Gomperts had an improper motive for declining to prosecute Lomando, the decision not to prosecute is activity for which Gomperts is entitled to absolute immunity.

Additionally, Gomperts' decision not to prosecute differs from the type of "inaction" that this Court has held falls outside the scope of absolute immunity.  See Odd, 538 F.3d at 217.  For example, a prosecutor's failure to release material witnesses after the dismissal/continuance of the trials in which they were set to testify was deemed an administrative task undeserving of absolute immunity because it required no advocacy and contravened a court order to "keep the court informed of the status of detained material witnesses." Id. at 213-14, 216-17.

Here, Gomperts' purported "inaction" concerned a decision not to prosecute Lomando based on the evidence law enforcement obtained.  The discretionary decision to prosecute or not prosecute involves actions, including the evaluation of facts in light of the elements of the crime, the source of those facts, the rules of evidence, and other legal considerations.  Because each challenged aspect of Gomperts' conduct was in furtherance

_____

[6] The Estate asks us to abandon Kulwicki, 969 F.2d at 1464, and to create a bad-faith exception to absolute prosecutorial immunity.  Appellant Br. at 28.  As a three-judge panel, we are bound by our precedent, see United States v. Kulick, 629 F.3d 165, 170 n.4 (3d Cir. 2010), and thus we may not rule contrary to Kulwicki.  I.O.P. 9.1 ("It is the tradition of this court that the holding of a panel in a precedential opinion is binding on subsequent panels.  Thus, no subsequent panel overrules the holding in a precedential opinion of a previous panel.  Court en banc consideration is required to do so.").

of quasi-judicial functions, Gomperts is entitled to absolute prosecutorial immunity.

## III

For the foregoing reasons, we will affirm the District Court's orders.