Nancy **SIMMERMAN, Herbert Simmerman, and Paul Simmerman, Each individually and trading as the Wee Care Center and/or Serendipity Pre–School and Child Care Center, Plaintiffs,**

**v.**

John **CORINO, Cape May County Prosecutor, Robert G. Wells, First Assistant Prosecutor of Cape May County, Antonia Cowan, Assistant Prosecutor of Cape May County, Marie Hayes, Investigator for Cape May County Prosecutor, Office of the Prosecutor of Cape May County, Betty Veach and Samuel Veach, Each individually and as parents and natural guardians for Christopher Samuel Veach, a minor, Veronica Leider and Ronald Leider, Each individually and as parents and natural guardians of Ronald J. "Ronnie" Leider, a minor, Dick Crane, Bureau of Licensing of the Division of Youth and Family Services, Susan Manion, Institutional Abuse Unit Administrator, DYFS Bureau of Licensing, DYFS Institutional Abuse Investigation Unit, Division of Youth and Family Services (DYFS), Department of Human Services, Thomas Flanagan, Investigator for State Department of Criminal Justice, State Trooper Eugene Petrella, Detective David Kenna, Colonel Justin J. Dintino, New Jersey State Police, Officer John Doe # 1, Officer John Doe # 2,**

Officer John Doe # 3, Officer John Doe # 4, Officer John Doe # 5, New Jersey State Police, Dr. Anne Burgess, Pamela Kane, Dr. Martin Finkel, Richard Roes Nos. 1 through 25, and State of New Jersey, Defendants.

Civ. A. No. 92–194 (JEI).

United States District Court,
D. New Jersey.

Oct. 23, 1992.

Garber & Guralnick, Mount Laurel, N.J., Annmarie Algeo, for plaintiffs.

James S. Webb, Jr., Wildwood, N.J., for defendants Corino, Wells, Cowan, Hayes and Cape May County Prosecutor's Office.

William E. Nugent, Nugent, Fitzgerald, McGroarty & McFadden, P.A., Linwood, N.J., for defendants Betty Veach, Samuel Veach, and Christopher Veach.

Robert E. Bailey, Vineland, N.J., for defendants Veronica Leider, Ronald Leider, and Ronald J. "Ronnie" Leider.

Don E. Catinello, Deputy Atty. Gen., Div. of Law, and John M. Fahy, Sr. Deputy Atty. Gen., Legal Affairs, Office of the Atty. Gen., Trenton, N.J., for State of N.J., New Jersey Dept. of Human Services, New Jersey Div. of Youth and Family Services, New Jersey State Police, and defendants Scalera, Crane, Manion, Finkel, Flanagan, Petrella, Kenna, and Dintino.

Daniel H. Greenberg, New York City, for defendant Burgess.

## OPINION

IRENAS, District Judge:

Presently before the court are motions for summary judgment and/or dismissal by the "State Defendants,"[1] by the "County Defendants,"[2] by defendants Leider, and by defendants Veach.[3]

---

1. The State defendants' brief lists the represented parties as the State of New Jersey, the New Jersey Department of Human Services (DHS), New Jersey Division of Youth and Family Services (DYFS), the New Jersey State Police, Nicholas Scalera, Richard Crane, Susan Manion, Dr. Martin Finkel, Thomas Flanagan, Eugene Petrella, David Kenna, and Colonel Justin Dintino.

In their brief, the State defendants noted that DHS is DYFS' "mother agency," and that the DYFS Bureau of Licensing and the DYFS Institutional Abuse Investigation Unit are both subdivisions of DYFS. Brief in Support of the State Defendants' Motion for Dismissal and/or Summary Judgment [hereinafter "State Defendants' Brief] at 16. Plaintiff has not disputed this

assertion. Because those entities are not distinguishable under Eleventh Amendment analysis, see Part III–B infra, this Opinion will refer to DHS, DYFS, and DYFS subdivisions collectively as "DYFS."

2. John Corino, Cape May County Prosecutor; Robert G. Wells, First Assistant Prosecutor of Cape May County; Former Assistant Prosecutor Antonia Cowan; Investigator Marie Hayes; and Office of the Cape May County Prosecutor.

3. The Leider and Veach defendants will be referred to in this Opinion collectively as the "parent defendants."

For the reasons stated below, the court will grant summary judgment for the State and County defendants on plaintiffs' claims under 42 U.S.C. § 1983, and will dismiss plaintiffs' federal RICO claim. Because the court is disposing of all claims over which it has original jurisdiction, the court will also decline to exercise its supplemental jurisdiction over the remaining state law claims.

## I. BACKGROUND

In December of 1989, the New Jersey State Police and the Cape May County Prosecutor's office commenced an investigation of the Wee Care day care center, which was owned and operated by the plaintiffs, Nancy, Herbert, and Paul Simmerman.

The investigations were triggered when Mrs. Betty Veach, a parent of one of the children attending the Wee Care Center, reported to a State Police Trooper that she suspected her son Christopher was being sexually abused by the Simmermans. The trooper relayed this information to a State Police detective. After personally interviewing Betty and Christopher Veach, the detective obtained a warrant and participated in a search of plaintiffs' home and business.

The investigation continued from December, 1989, through April, 1990. During that time, more than thirty children who attended the Wee Care Center were interviewed, along with their parents.[4] DYFS officials also consulted medical experts, who analyzed the children's behavior for evidence of abuse.

On April 5, 1990, a grand jury indicted the Simmermans on charges that they sexually abused children at the Wee Care Center. An earlier grand jury had returned no bill.[5]

The Simmermans' criminal trial took place in January, 1991. Among the expert witnesses called by the prosecution were Dr. Anne Burgess, a nurse and psychologist; Pamela Kane, a psychologist; and Dr. Martin Finkel, a physician. At the conclusion of the trial, the Simmermans were acquitted.[6]

On January 16, 1992, plaintiffs filed this suit. The Complaint named as defendants sixteen named individuals, thirty unnamed individuals, and six entities. To summarize, the defendants are the Office of the Prosecutor of Cape May County and individuals working in the prosecutor's office; the New Jersey State Police, its commander, and various State Police officers; the New Jersey Department of Human Services, DYFS, DYFS subdivisions, and individuals employed by those entities; three of the prosecution's expert witnesses; and the State of New Jersey.

The Complaint contains seventeen counts alleging both federal and state claims. The federal counts include Count I, a civil rights act claim under 42 U.S.C. § 1983; Count II, Malicious Prosecution under 42 U.S.C. § 1983; and Count IV, RICO Civil Fraud and Conspiracy. The remaining fourteen counts include state law claims for maliciously obtaining a grand jury indictment, defamation, infliction of emotional distress, expert fraud, and negligence.

The Complaint generally alleges that all of the defendants pursued the investigation and prosecution of the Simmermans in bad faith, acting solely out of malice toward the plaintiffs and from a desire to gain personal recognition for participating in a high-profile child sexual abuse prosecution.

## II. RULE 8 PLEADING REQUIREMENTS

Although the defendants have not moved to strike the Complaint under Fed.R.Civ.P. 8(a), the court feels compelled to comment on plaintiffs' flagrant, and almost boastful,[7] noncompliance with that Rule.

---

**4.** Veronica and Ronald Leider, two of the named defendants in this case, reported that they suspected their son Ronnie had also been abused by the Simmermans.

**5.** The parties' submissions do not indicate the date of the earlier grand jury proceeding.

**6.** Again, the parties have not indicated the exact date of the acquittal.

**7.** For example, in his brief, plaintiffs' counsel continually reminds the court that "Count IV of Plaintiffs' Complaint spans 20 pages," and

Rule 8(a) provides that "A pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Weighing in at seventy-seven pages, this Complaint is hardly "short." The length of the Complaint might not be deserving of criticism were all of it necessary. This Complaint, however, is heavily padded with repetition and meaningless verbiage.

For example, in one assault on the prosecutors' motives for trying the Simmermans, the Complaint states that the prosecutors acted "for reasons of personal glorification, self-aggrandizement, high publicity, ego and stubbornness." Count IV, ¶ 37. Another unhelpful allegation reads,

> It was a part of the scheme to ruin the Plaintiffs that Defendants ... would and did agree and conspired together and with the others to devise and participate in a plan of deceit and deception, whereby they organized a campaign of public opposition to the Plaintiffs' business and day care program, and abused their positions as citizens and law enforcement officers to do so; they would and did abuse the discretion granted to them by the State Police and the Prosecutor's Office; and they would and did use false and fraudulent pretenses, misrepresentations, and unfounded or insufficient evidence calculated to deceive law enforcement agencies, state licensure and certification officials, local media and members of the public to turn against the Plaintiffs, all so as to unlawfully, intentionally and willfully, and with the intent to harm, that is, knowingly and with the specific intent to falsify claims, deceive officials, abuse court process, and maliciously prosecute the Plaintiffs.

Count IV, ¶ 24.

Considering its bulk, the Complaint is remarkably unencumbered by specific factual allegations. Admittedly, Rule 8(a) was designed to eliminate the more technical common-law pleading requirements. *See,*

*e.g., Frazier v. Southeastern Pennsylvania Transportation Authority,* 785 F.2d 65, 66–67 (3d Cir.1986). However, the Rule's concept of notice pleading was not intended to do away with factual pleading altogether.

The Complaint is fairly specific in its allegations concerning the animosity between the complaining parent, Betty Veach, and Nancy Simmerman. It also contains specific allegations of how Mrs. Veach initiated the investigation by calling New Jersey State Trooper Petrella.

However, at the heart of this lawsuit is the contention that the investigation itself, and the subsequent prosecution of the plaintiffs, were unlawful. At the point that pertinent factual allegations should begin, the Complaint seems to float free of its moorings and drift into a swirl of dramatic and conclusory allegations.

One representative allegation states that sometime between December 1989 and "spring 1990," "Plaintiffs were arrested, investigated, interrogated, invaded in their home and private affairs and subjected to widespread media coverage orchestrated by and/or facilitated by the New Jersey State Defendants and the Police/Prosecutor Defendants." Complaint, Count I, ¶ 6. This court cannot locate anywhere within the Complaint an allegation of the date and time of any of those activities, the names of any specific individual who performed any of those actions, or any clear allegation as to why these actions were unlawful.

In sum, contrary to Rule 8's direction to be short and plain, this Complaint is long and confusing. Not only has this pleading violated the Rule, but it has also forced both the defendants and this court to waste much valuable time in attempts to decipher its meaning.

### III. MOTIONS FOR SUMMARY JUDGMENT

#### A. *Standard for Summary Judgment*

The standard for granting a motion for summary judgment under Fed.R.Civ.P.

---

"Plaintiffs' lawsuit is 77 pages, of which 20 are devoted to the RICO claims." Brief in Opposition to the State Defendants' Motion for Dismissal and/or Summary Judgment [hereinafter "Plaintiffs' Brief"] at 21, 28.

Rule 56 is demanding and stringent. *Wilson v. Sullivan*, 709 F.Supp. 1351 (D.N.J. 1989). Under Fed.R.Civ.P. 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

At the summary judgment stage, it is not the role of the judge to weigh the evidence or to evaluate its credibility, but to determine "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party such that a reasonable jury could return a verdict for that party. *Id.* Although the moving party bears the initial burden of informing the district court of the basis for its motion, there is no requirement in the Rule that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

Of particular interest to this case, the Supreme Court has stated that "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citation omitted) (internal quotations omitted). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106

S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

Furthermore, "if the factual context renders [a] claim implausible ... [the nonmoving party] must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Finally, summary judgment should be granted unless a dispute over a material fact is genuine, which the Court has defined as such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

### B. *Eleventh Amendment Immunity*

Counts I and II of the Complaint allege violations of 42 U.S.C. § 1983 by the State defendants. The State defendants have moved for summary judgment on all claims against the State entities and against State officials in their official capacities on the ground that such suits are barred by the Eleventh Amendment.

Section 1983 creates liability for any "person" who, under color of state law, deprives another person of a constitutional right. 42 U.S.C. § 1983. In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court considered whether a State is a "person" that can be sued under this section.

The Court could not have been more clear in its holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." [8] *Will*, 491 U.S. at 71, 109 S.Ct. at 2311. This conclusion was based on both the

---

**8.** Under *Hafer v. Melo*, — U.S. —, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the named individuals are still amenable to suit in their individual capacities and may be held personally liable under § 1983. Plaintiffs' counsel apparently misunderstands the distinction between suing a state official *in his official capacity* and suing a state official for *acts taken* in her official capacity. Defendants' Eleventh Amendment argument addresses only the former, *see* at Defendants' Brief at 14–17, so plaintiffs' response regarding the latter is inapposite. *See* Plaintiffs' Brief at 17–20.

Eleventh Amendment bar of suits against States, and on the Court's statutory interpretation of Section 1983 itself.

Plaintiffs have argued that the § 1983 claims against the New Jersey State Police and DYFS are nevertheless viable because neither entity should be considered part of the State for Eleventh Amendment purposes. Plaintiffs have proposed a "functional analysis," *see* Plaintiffs' Brief at 16, to reach this result.

Plaintiffs' attempt to classify the New Jersey State Police and DYFS as other than state agencies utterly disregards applicable law. As summarized in *Fitchik v. New Jersey Transit Rail Operations, Inc.,* 873 F.2d 655 (3d Cir.1989), *cert. denied,* 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989), the three relevant questions for Eleventh Amendment immunity are "(1) Whether the money that would pay the judgment would come from the state.... (2) The status of the agency under state law.... and (3) What degree of autonomy the agency has." *Id.* at 659. Of these factors, the first is the most important. *Id.* See also *Kovats v. Rutgers, State University,* 822 F.2d 1303, 1307 (3d Cir.1987); *Blake v. Kline,* 612 F.2d 718, 722 (3d Cir. 1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980); *Urbano v. Board of Managers of New Jersey State Prison,* 415 F.2d 247, 250–52 (3d Cir.1969), *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970).

Although this court does not have before it any financial information regarding funding of the State Police and DYFS, it seems beyond dispute that both entities are arms of the State.[9] By statute, the State police "shall be subject to the call of the Governor. They shall be peace officers of the State ..." N.J.Stat.Ann. § 53:2–1 (West 1986 & Supp.1992). The Division of Youth and Family Services is likewise created by statute and is answerable to other State agencies. *See* N.J.Stat.Ann. § 30:4C–1 *et seq.* (West 1981 & Supp.1992).

This court finds that, contrary to plaintiffs' rather fanciful assertion, neither the State Police nor DYFS "transmutated" into a municipal agency for Eleventh Amendment purposes. *See* Plaintiffs' Brief at 13, 17. As stated above, judgment must be entered in favor of the State defendants on all § 1983 claims against New Jersey state agencies and against state officials in their official capacities.[10]

### C. *Absolute and Qualified Immunity*

In repeated recitations of defendants' alleged sins, the Complaint endeavors to state a claim under 42 U.S.C. § 1983. Numbered paragraph nine on page 18 summarizes the allegations thus:

> As a result of the concerted unlawful and malicious detention, confinement, indictment, re-indictment, improper investigations, evidence tampering, public prosecutions of the Plaintiffs, sham proceedings and the publicity campaign ... the Plaintiffs were deprived of their liberty without due process of law and deprived of equal protection of the laws....

Other paragraphs in the Complaint refer to defendants arresting, Count I, ¶¶ 5, 10; interrogating, Count I, ¶ 6, Count II, ¶ 3; searching, Count I, ¶¶ 8, 10, Count IV, ¶ 34; seizing, Count I, ¶¶ 8, 10, Count IV, ¶ 34; harassing, Count I, ¶ 10; imprisoning plaintiffs, Count I, ¶ 10; invading plaintiffs' privacy, Count I, ¶¶ 6, 8; and swearing out criminal complaints, Count I, ¶ 7.

In their motions for summary judgment, the State and County defendants have asserted both absolute and qualified immunity from § 1983 suits based on these activities. *See* State Defendants' Brief at 25–37; Brief in Support of Notice of Motion on Behalf of Defendants John Corino *et al,* at

---

9. The court notes that the Complaint itself describes DYFS as "an agency and entity of the State of New Jersey," and the State Police as "a state law enforcement agency and governmental unit, organized under the laws of the State of New Jersey."

10. The Complaint contains no specific allegations against the individuals Colonel Dintino, Nicholas Scalera, Dick Crane, and Susan Manion. At oral argument, plaintiffs' counsel conceded that these individuals were being sued in their official capacities only. Accordingly, summary judgment is granted for defendants on all claims against these four individuals.

16–22. Immunity doctrines exist to protect functions, not persons. *See Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988); *Kulwicki v. Dawson,* 969 F.2d 1454, 1463 (3d Cir.1992). The court will therefore discuss separately the acts and immunities relevant to plaintiffs' § 1983 claims.

### 1. *Absolute Immunity*

▆ Plaintiffs' counsel appears oblivious to the well-established doctrine of absolute prosecutorial immunity. In *Imbler v. Pachtman,* the Supreme Court held that activities "intimately associated with the judicial process" are absolutely immune from civil suit. 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976); *see also Burns v. Reed,* — U.S. —, ———–——, 111 S.Ct. 1934, 1938–39, 114 L.Ed.2d 547 (1991).

Powerful public policy considerations support this immunity doctrine. Allowing the threat of civil liability for prosecutorial actions could severely inhibit prosecutors' willingness to exercise their judgment in the conduct of trials and the presentation of evidence. *Imbler,* 424 U.S. at 424–28, 96 S.Ct. at 992–94. Recognizing that this immunity may bar some meritorious claims, the Supreme Court has nevertheless held that "the alternative of limiting the official's immunity would disserve the broader public interest." *Briscoe v. LaHue,* 460 U.S. 325, 345, 103 S.Ct. 1108, 1120, 75 L.Ed.2d 96 (1983).

In *Imbler,* the prosecutor's absolute immunity from civil damages suits extended to allegations that he intentionally permitted a witness to give false testimony and altered a police artist's sketch that was used as evidence. *See* 424 U.S. at 416, 96 S.Ct. at 988. *Imbler* also discussed immunity for the decision to prosecute, and for procurement of a grand jury indictment. *See id.* at 421–24, 96 S.Ct. at 990–92; *see also Burns,* — U.S. at —, 111 S.Ct. at 1939 (absolute immunity for alleged use of false testimony and suppression of exculpatory evidence); *Rose v. Bartle,* 871 F.2d 331, 347 n. 12 (3d Cir.1989) (absolute immu-

nity for instituting grand jury proceedings and improperly influencing the grand jury).

Plaintiffs' allegations concerning "indictment," "re-indictment," "evidence tampering," "public prosecutions," and "sham proceedings" are within the scope of absolute prosecutorial immunity and cannot be the subject of a suit under § 1983. To the extent that any claim is based on these actions it must therefore be dismissed.

### 2. *Qualified Immunity*

Most of the remaining actions alleged in Count I of the Complaint could support a cause of action under 42 U.S.C. § 1983. If the state and county officials detained, confined, or imprisoned plaintiffs without due process of law, subjected plaintiffs to unreasonable searches and seizures, or coercively interrogated plaintiffs, plaintiffs' constitutional rights might have been violated.

The State and County defendants[11] assert they are entitled to qualified immunity from suit in exercise of these functions. Plaintiffs do not dispute that qualified immunity doctrines are applicable here. *See* Plaintiffs' Brief at 44.

▆ Qualified immunity shields government officials performing discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This immunity extends to police officers and prosecutorial staff conducting criminal investigations. *See, e.g., Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (warrantless search); *Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986) (search warrant application); *Mitchell v. Forsyth,* 472 U.S. 511, 524, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985) (wiretap); *Kulwicki v. Dawson,* 969 F.2d 1454, 1468 (3d Cir.1992) (filing criminal charges).

---

**11.** See notes 1 & 2, *supra,* for lists of these defendants.

However, this case turns on slightly different grounds from the usual qualified immunity situation. Giving the Complaint a generous reading, the court finds that the key issue here is not whether the rights alleged to be violated are "clearly established,"[12] but whether the rights were in fact violated due to defendants' unlawful motives.

This case can be categorized as one "when clearly established law makes the conduct legal or illegal depending upon the intent with which it is performed." *Halperin v. Kissinger*, 807 F.2d 180, 184 (D.C.Cir.1986); *see also Poe v. Haydon*, 853 F.2d 418, 431–32 (6th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). Plaintiffs argue that although defendants' actions may have appeared lawful, all of the defendants acted purely out of malice, without probable cause, and with knowledge that the accusations against plaintiffs were the mere fabrication of "a vengeful parent." *See* Plaintiffs' Brief at 43–49.[13]

■ Starting with the allegations of unlawful searches of plaintiffs' home and business, the State defendants counter that these searches were proper and reasonable.[14] In a report dated December 4, 1989, State Police Detective Kenna details his conversations with Mrs. Betty Veach, the mother of Christopher Veach, one of the alleged child victims. The report states that Mrs. Veach called a relative who is a member of the New Jersey State Police, Trooper Petrella, and that Trooper Petrella then contacted Detective Kenna. Detective

Kenna himself then contacted Mrs. Veach. State Defendants' Appendix [hereinafter "A–"] at 3.

The report then describes conversations between Detective Kenna and the Veaches. The Veaches' four-year-old son, Christopher, is quoted as saying to Detective Kenna, "Paul rubbed my dinger and said I have a big potato," "Ms. Nancy twisted my dinger," and "Mr. Herb put his mouth on my dinger." Christopher also described having his picture taken by Nancy with his clothes off. (A–3) Mrs. Veach advised Detective Kenna that "Mr. Herb," "Ms. Nancy" and "Paul" referred to the Simmermans, and that Christopher refers to his penis as his "dinger." (A–2). Mrs. Veach also informed Detective Kenna of other statements and actions by Christopher that seemed to refer to acts of abuse by the plaintiffs. (A–2—A–4).

The report states that "[b]ased on the information received," Detective Kenna completed an Affidavit and Search Warrant for the Wee Care Center and Simmerman residence. Judge Louis F. Hornstine, Atlantic County Superior Court, reviewed the Affidavit and then approved the Search Warrant. (A–4)

This court finds that the defendants have set forth substantial evidence of their good faith in searching the Simmermans' home and business. Specifically, Detective Kenna spoke with the Veaches himself before proceeding with the investigation, and he obtained a warrant from a judge before conducting the search.

**12.** Plaintiffs' rights to be free of unreasonable searches and seizures, and not to be deprived of liberty due to official caprice, are surely well established.

**13.** For example, the Complaint alleges only that the searches and seizures were "improper and unwarranted" due to defendants' motivations, not that the police acted without search warrants. Complaint, Count IV, ¶ 39. The Complaint is replete with colorful descriptions of defendants' bad faith:

"willful, wanton, malicious, and oppressive and ... motivated solely by a desire to win, a desire to vindicate earlier errors in judgment, and a desire to legitimize shoddy police work, and ... further motivated by a desire to harm

plaintiffs and by ill will directed toward them."
Complaint, Count III, ¶ 8.

**14.** In their motion for summary judgment, the State defendants have presented substantial documentation of the Simmerman investigation. The exhibits submitted in support of the motion include two detailed investigation reports by State Police Detective Kenna, a 60–page confidential report on the Simmerman case from DYFS, and two psychological and one physical evaluation of children who attended the Wee Care Center. Also included are documents from DYFS relating to the Wee Care Center's licensing.

The burden thus falls to the plaintiffs to show "some significant probative evidence tending to support the complaint." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). Plaintiffs here have had ample opportunity to respond to defendants' summary judgment motions with factual material, or at least some legitimate factual allegation, that would support the wildly implausible scenario described in the Complaint. Instead of filing responsive affidavits, plaintiffs' briefs simply refer the court back to the Complaint's thicket of purple prose and conclusory statements.[15] *See, e.g.,* Plaintiffs' Brief at 42.

Turning to the Complaint, it alleges that between December 1 and December 4, 1989, the parent defendants communicated with one or more police officers regarding plaintiffs' activities at the Wee Care Center. Based on this allegedly false information, defendants "in various combinations with each other undertook improper and unwarranted raids" of plaintiffs' home and business.[16] *See* Complaint, Count IV, ¶¶ 33–35.

The Complaint appears to contradict itself regarding police motivations for the search and seizure. The parent defendants are alleged to have "deliberately and willfully concocted [the accusations] with the intent to deceive law enforcement officials," Complaint, Count IV, ¶ 33, yet the deceived officers are then alleged to have colluded with the parents who lied to them. Complaint, Count IV, ¶ 35.

Even if that contradiction somehow is resolved in plaintiffs' favor, the only facts alleged in support of the impermissible motives behind the searches are that Mrs. Veach had a feud with Mrs. Simmerman, that Mrs. Veach communicated false charges of abuse to Trooper Petrella, and that the State Police proceeded to investigate those charges. *See* Complaint, Count IV, ¶¶ 27–35.[17] There is no factual assertion that could even remotely corroborate the allegation that the State Police searched the plaintiffs' home and business with knowledge that the sex abuse charges were fabricated.[18]

The fact that Betty Veach and Trooper Petrella are related does not create any reasonable inference that Trooper Petrella would knowingly pursue false charges, nor that he would drag between eight and thirty-eight other state officials into some nefarious scheme.

In fact, the State defendants' supporting documents indicate that Trooper Petrella did precisely what he should have done—he relayed Mrs. Veach's concern to a detective, David Kenna, and had no further involvement in the investigation. Aside from that communication to Kenna, Trooper Petrella's name appears nowhere else in Detective Kenna's reports, and is not mentioned at all in the 60-page DYFS chronicle of the investigation.

---

**15.** In doing so, plaintiffs appear to have directly contradicted the instruction in Fed.R.Civ.P. 56(e) that a party opposing a summary judgment motion "may not rest upon the mere allegations or denials of [that party's] pleading."

**16.** The use of "unwarranted" here is misleading in that it seems to indicate that the searches were conducted without warrants. This court does not look kindly on what appears to be plaintiffs' use of deliberately deceptive phrases.

**17.** The Complaint appears to concede that at least some of the investigation was undertaken in good faith, as it refers to "conduct that had been undertaken without probable cause, and *once discovered, had been pursued and perpetuated* without continuing probable cause." Complaint, Count IV, ¶ 35 (emphasis added).

**18.** It is possible that a complaint could allege facts sufficient to constitute circumstantial evidence of malicious motive. For example, in *Kulwicki,* plaintiff in a malicious prosecution case not dissimilar to this one alleged that he and the county district attorney were political rivals, that the district attorney had directed a police officer to investigate plaintiff, and that the police officer filed a criminal complaint without first contacting other relevant government agencies. *See* 969 F.2d at 1458–59; *see also Siegert v. Gilley,* 895 F.2d 797, 808 (D.C.Cir. 1990) (Wald, C.J., concurring) (plaintiff alleged that defendant harbored resentment toward him, and alleged specific reasons for this resentment), *aff'd on other grounds,* —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

Plaintiffs have produced no specific, non-conclusory allegation of fact that would indicate that Trooper Petrella told Detective Kenna that the charges were untrue, or even that Petrella had any motivation to do so. Alternatively, had Petrella simply lied to Kenna, plaintiffs have not alleged that Petrella thereafter had any control over the course of the investigation.

The fact that a jury failed to convict the Simmermans of child sexual abuse also does not support any reasonable inference that the defendants knew or even suspected that plaintiffs were innocent. Were the court to draw such an inference, every acquitted criminal defendant would have a basis for launching this type of lawsuit. This court will not invite such a result.

The court thus finds that plaintiffs have failed to demonstrate that there is a genuine issue of material fact regarding the propriety of the State Police searches. Even if Mrs. Veach purposely concocted specious charges of abuse, this court will not bridge the gap in plaintiffs' factual allegations by concluding that the State and County defendants therefore also acted in bad faith.

■ Defendants' evidence also supports a finding that the unlawful seizures alleged in the Complaint were reasonable and proper. Detective Kenna's report states that Christopher Veach said that "Nancy takes pictures of him ... while he is not wearing clothes. The camera used was described as being a big camera, the kind you put a tape in." (A-3) Regarding the seizures, the report states that "[a]s a result of the search, 96 video cassette tapes were confiscated for the purpose of viewing the tapes to determine if the tapes contain any child pornography." (A-4)

Plaintiffs have produced nothing to rebut defendants' evidence on this point. As stated above, the Complaint does not allege that the police acted without a warrant. In the Complaint's cloud of accusatory verbiage, this court can find no factual allegation that could reasonably support a conclusion that seizure of the videotapes was unlawful.

■ The Complaint also alleges some sort of unlawful interrogation of the plaintiffs, Count II, ¶ 3. Detective Kenna's report states that when the police encountered the Simmermans while conducting their search, the police advised plaintiffs of their *Miranda* rights. (A-4) Plaintiffs have not explained to this court how they arrived at the conclusion that any interrogations conducted by the police violated their constitutional rights.

The remaining allegations fare no better. The Complaint merely asserts that defendants arrested, imprisoned, and harassed the plaintiffs, swore out criminal complaints, and invaded plaintiffs' privacy "maliciously," "without any cause or justification," and "contrary to the laws of the State of New Jersey and the United States of America." *See* Complaint, Count I, ¶ 7 & 10, Count II, ¶ 3.

It is virtually impossible to decipher exactly what the Complaint is referring to, as it provides no times or dates of these occurrences, and does not indicate exactly who performed which specific acts. These conclusory allegations, without a shred of factual support, will not refute the State and County defendants' assertion of qualified immunity.

There remains the issue of whether plaintiffs are entitled to discovery whereby they could seek support for the Complaint's allegations. *See* Plaintiffs' Brief at 49.

In general, a mere hunch that government officials possessed unlawful motives will not suffice to subject them to the ordeal of trial, or even to the burdens of discovery. As the Supreme Court stated,

[S]ubstantial costs attend the litigation of the subjective good faith of government officials. Not only are there the general costs of subjecting officials to the risks of trial—distraction of officials from their government duties, inhibition of discretionary action, and deterrence of able people from public service. There are special costs to "subjective" inquiries of this kind.... Judicial inquiry into subjective motivation therefore may entail broad-ranging discovery and the deposing of numerous persons.... Inqui-

ries of this kind can be peculiarly disruptive of effective government.

*Harlow,* 457 U.S. at 816–17, 102 S.Ct. at 2737–38 (footnotes omitted). *See also Butz v. Economou,* 438 U.S. 478, 508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978) ("[D]amages suits concerning constitutional violations ... can be terminated on a properly supported motion for summary judgment based on the defense of immunity ... to ensure that ... officials are not harassed by frivolous lawsuits." (citations and footnote omitted)).

This court finds that plaintiffs' unsupported speculation regarding the State and County defendants' motives will not suffice to permit this lawsuit to proceed to discovery. Accordingly, the State and County defendants' motions for summary judgment based on qualified immunity will be granted.[19]

## IV. MOTION TO DISMISS

The State and County defendants, Leider defendants, and Veach defendants have moved to dismiss plaintiffs' RICO claim pursuant to Fed.R.Civ.P. 12(b)(6) for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), the court must determine "Whether taking the allegations of the complaint as true, ... and viewing them liberally giving plaintiffs the benefit of all inferences which fairly may be drawn therefrom, ... 'it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.'" *Rose v. Bartle,* 871 F.2d 331, 342 (3d Cir.1989) (citations omitted).

In general, "RICO provides for liability in civil suits brought by any person injured 'in his business or property' by a RICO violation, with a compulsory award of treble damages, costs, and attorneys fees." *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 906 (3d Cir.1991) (citation omitted). As defined by statute, "racketeering activity ... include[s] state felonies punishable by imprisonment of more than a year such as murder, kidnaping, gambling or extortion, as well as more than thirty federal crimes, such as drug offenses, obstruction of justice, obscenity, and mail, wire, bankruptcy, and securities fraud. 18 U.S.C. § 1961(1). A 'pattern' of racketeering requires within a ten-year period the commission of at least two predicate acts bearing the indicia of 'relatedness' and 'continuity.'" *Id.* at 907.

The acts allegedly performed by the parent defendants which plaintiffs claim constitute "unlawful racketeering activity" are:

1) "Conspir[ing] ... to falsify claims of child sexual abuse ... against the Plaintiffs," Count IV, ¶ 23;

2) "[A]ccomplish[ing] the corruption of various police officers," Count IV, ¶ 23;

3) "[O]rganiz[ing] a campaign of public opposition to the Plaintiffs' business and day care program," Count IV, ¶ 24;

4) "[A]bus[ing] their positions as citizens and law enforcement officers" and "abus[ing] the discretion granted to them by the State Police and the Prosecutor's Office," Count IV, ¶ 24; and

5) "Pursu[ing] a scheme to shut down the Wee Care Center, falsify claims of sexual mistreatment to children, distort information furnished to them by their children ... to produce perjured testimony," Count IV, ¶ 32.

The alleged racketeering activities by the police are:

6) "Acting in combination with each other on the basis of a call from a family member, without probable cause or proper authority;

7) "Undertaking an improper raid of the Simmerman home on several occasions;

8) "Undertaking an improper raid of the Wee Care Center business on several occasions;

9) "Seizing personal belongings from the Simmerman home, including videotapes;

---

19. The Complaint's allegation that defendants "subjected [plaintiffs] to widespread media coverage," Complaint, Count I, ¶ 6, does not appear to state a violation of any known constitutional right. That claim is also disposed of on this motion for summary judgment.

10) "Seizing, without just cause, materials and objects belonging to the Wee Care Center;

11) "Colluding to gather evidence as part of a fishing trip, to satisfy unsubstantiated allegations of child abuse;

12) "Interviewing parents, taking statements and conspiring to authenticate those statements to qualify as a criminal charge against the Defendants;

13) "Perpetuating investigative activities without probable cause to find or create facts to legitimize charges against the Defendants;

14) "Conspiring with the prosecutors to fix the bungled raids and ill-fated investigation, in order to design a case against the Defendants so that an indictment would succeed."

Plaintiffs' Brief at 27.

The alleged racketeering acts of the Cape May County prosecutors include:

15) "[A]dopt[ing] the false factual accounts of the parent Defendants, permitt[ing] and authoriz[ing] the conduct of the state police Defendants, attempt[ing] to indict ... and repeatedly pursu[ing] indictments against the Plaintiffs, and further[ing] the spurious and unwarranted investigation," Count IV, ¶ 36;

16) "Altering, dubbing and falsifying a videotape [used as evidence]," Count IV, ¶ 37a;

17) "Retaining and hiring one or more expert witnesses" and distorting their testimony, Count IV, ¶ 37b;

18) "Shar[ing] false information with the state Department of Human Services, Division of Youth and Family Services [and other agencies] ... in a continuing effort to block the Wee Care Center from obtaining relicensure and/or recertification," Count IV, ¶ 37c;

19) "[C]ommunicat[ing] with each other in a quiet conspiracy ... to construct the semblance of a criminal case against the Plaintiffs when all of the Defendants ...

knew that no such genuine case existed," Count IV, ¶ 38.

The court cannot find in this extensive list any alleged violation of a federal offense enumerated in 18 U.S.C. § 1961(1)(B), (C), or (E).[20] The court also finds no allegation that would amount to an act or threat of "murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotics or other dangerous drugs" that is punishable under State law. 18 U.S.C. § 1961(1)(A). Even if the defendants here did commit acts fitting the Complaint's vague descriptions, none of those acts could fairly be construed as "racketeering."[21]

 Although plaintiffs did not argue this point in their brief, the Complaint also alleged racketeering activity in the form of mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. *See* Complaint, Count IV, ¶ 26. The court finds that these allegations also fail to state a claim.

The federal mail fraud statute criminalizes use of the mails for purposes of "executing any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses ..." 18 U.S.C. § 1341. Wire fraud consists of use of wires, radio or television for those purposes. 18 U.S.C. § 1343.

The court is unable to find in the Complaint any allegation that would constitute the requisite fraudulent scheme under the mail and wire fraud statutes. Plaintiffs have not alleged that the "officials and media representatives" who allegedly were lied to by the defendants, Complaint, Count IV, ¶ 26, were thereby defrauded. In fact, the only damages alleged in the RICO count were for injuries sustained by the plaintiffs.

Nor does the Complaint allege that the defendants defrauded the plaintiffs. If anything, plaintiffs contend that they were the only people who did not believe the

---

**20.** These sections define "racketeering activity" under RICO.

**21.** In addition, the alleged "racketeering" acts committed by the prosecutors relating to the

plaintiffs' indictment and prosecution should be absolutely immune from civil suit for damages. *See Imbler,* 424 U.S. at 424–31, 96 S.Ct. at 992–96.

defendants' misrepresentations and did not act in reliance on them.

Absent allegations of a fraudulent scheme to obtain money or property by false pretenses, plaintiffs' allegations of mail and wire fraud cannot stand.

Even if the sparse factual allegations of the Complaint could somehow be tortured into stating a claim for fraud, the mail and wire fraud claims would still fail under Fed.R.Civ.P. 9(b). Rule 9(b) provides that "the circumstances constituting fraud ... shall be stated with particularity." The purposes of the particularity requirement are "to place the defendants on notice of the precise misconduct with which they, are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.1984), *cert.*

*denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).

This Complaint does no more than state that "on numerous occasions" the defendants employed mail and wire communications to further "the scheme and artifice to deceive," Count IV, ¶ 43, and to "instigate and perpetuate a malicious prosecution," Count IV, ¶ 26. This court finds that these allegations fall far short of the level of particularity called for by Rule 9(b). In light of the § 1983 claim analysis above, this case also seems one in which protecting defendants from "spurious charges" seems especially appropriate.[22]

In short, plaintiffs' RICO count seems nothing more than an attempt to add bulk and the possibility of treble damages to the Complaint. `Accordingly, the court will dismiss plaintiffs' RICO claim in its entirety under Rule 12(b)(6).[23]

---

**22.** In *Saporito v. Combustion Engineering, Inc.*, 843 F.2d 666 (3d Cir.1988), after finding the complaint insufficient under Rule 9(b), the Third Circuit also held that the plaintiffs should be given leave to amend their complaint. The opinion noted that a district court dismissing a case under Rule 9(b) should determine "whether the claim as presented warrants the allowance of discovery." *Id.* at 675 (*quoting New England Data Services v. Becher*, 829 F.2d 286, 290 (1st Cir.1987)). Such a situation might exist "where ... the specific allegations of the plaintiff make it likely that the defendant used interstate mail or telecommunications facilities, and the specific information as to use is likely in the exclusive control of the defendant." *New England Data Services*, 829 F.2d at 290.

As stated above, plaintiffs have set forth no specific factual allegations to indicate that any mail or wire fraud was perpetrated. Based on that fact, and on all of the foregoing analysis, this court refuses to subject the defendants to discovery on this issue.

**23.** There are also significant questions as to whether the Complaint properly alleges the RICO "enterprise" and "pattern" requirements. 18 U.S.C. § 1961(4) & (5); 18 U.S.C. § 1962(c) & (d).

Under § 1962(c) and (d), the plaintiff must allege that the defendant "person" is distinct from the "enterprise." *See B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628, 634 (3d Cir. 1984); *Gilbert v. Prudential–Bache Securities, Inc.*, 643 F.Supp. 107, 110 (E.D.Pa.1986). The Complaint alleges that each defendant named in the RICO count is a "person," Count IV, ¶ 47, and that groups of those defendants constitute

three "enterprises," Count IV, ¶ 48. However, in Count IV, ¶ 50, the Complaint requests judgment against those *groups* of defendants that were named as "enterprises."

It is similarly unclear whether the plaintiffs have satisfied the RICO "pattern" requirement. In *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court held that a plaintiff must show "continuity of racketeering activity, or its threat." *Id.* at 241, 109 S.Ct. at 2901. "A party ... may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. *Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement ....*" *Id.* at 242, 109 S.Ct. at 2902 (emphasis added).

Subsequent Third Circuit cases "make clear that duration is the *sine qua non* of continuity." *Hindes v. Castle*, 937 F.2d 868, 873 (3d Cir.1991). In a series of cases discussing RICO's pattern requirement, this Circuit has explicitly held that a period of one year is not "substantial" and, without a threat of future criminal activity, cannot constitute a RICO "pattern." *See, e.g., Hughes v. Consol–Penn. Coal Co.*, 945 F.2d 594, 611 (3d Cir.1991) (twelve months not substantial), *cert. denied*, —— U.S. ——, 112 S.Ct. 2300, 119 L.Ed.2d 224 (1992).

The Complaint alleges that the "relevant times" are from "December 1989 through spring of 1991." Count IV, ¶ 6. Although this period spans approximately seventeen months, it is unclear whether the alleged "racketeering activities" continued throughout this entire period. In addition, plaintiffs have not alleged that the activities are continuing, or that there is any threat of such continuity.

## V. REMAINING STATE LAW CLAIMS

 Plaintiffs' remaining claims are state law causes of action alleged to be within the court's supplemental jurisdiction. *See* Complaint, Counts III, V–XVII.

Under 28 U.S.C. § 1367, a district court "may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." In addition, the Third Circuit has stated that where a party's federal claims are disposed of on a summary judgment motion, the court should generally refrain from exercising supplemental jurisdiction over the remaining state claims. *See Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 195–96 (3rd Cir.1976); *see also Foster v. Township of Hillside*, 780 F.Supp. 1026, 1047 (D.N.J. 1992).

Accordingly, this court declines to exercise supplemental jurisdiction over the remaining state claims.[24]

## VI. CONCLUSION

The court is disposing of all claims in this case in the following manner:

1) Summary judgment is granted for defendants on all claims against the State of New Jersey, state agencies, and state officials in their official capacities,[25] based on the Eleventh Amendment;

2) Summary judgment is granted for defendants on all remaining claims under 42 U.S.C. § 1983 on the basis of absolute and qualified immunity;

3) Plaintiffs' federal RICO claim is dismissed pursuant to Fed.R.Civ.P. 12(b)(6);

4) The court declines to exercise its supplemental jurisdiction over all remaining state law claims and is therefore dismissing them.

The court will enter an appropriate order.

---

**24.** It should be noted that these claims are the only ones in which the "witness defendants" Finkel, Kane and Burgess were named.

**25.** As noted in footnote 10, *supra,* all claims against defendants Colonel Dintino, Nicholas Scalera, Dick Crane, and Susan Manion are disposed of in this manner.