17 N.J. Super. 10 (1951)
85 A.2d 284
ABRAHAM M. HERMAN AND FANNIE D. HERMAN, PLAINTIFFS-RESPONDENTS,
v.
RAILWAY EXPRESS AGENCY, INCORPORATED, A DELAWARE CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 1951.
Decided December 19, 1951.
*12 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Abraham M. Herman argued the cause for the plaintiffs-respondents (Mr. William J. McCormick, attorney).
Mr. William H.D. Cox argued the cause for the defendant-appellant (Messrs. Cox and Walburg, attorneys).
The opinion of the court was delivered by EASTWOOD, J.A.D.
The Essex County District Court, sitting with a jury, directed a verdict for the plaintiffs for damages to merchandise allegedly sustained in transitu. The defendant appeals from the ensuing judgment.
On February 19, 1950, the plaintiff, Fannie D. Herman, arrived at New York City from Europe. After inspection *13 by customs officials, two trunks and a wooden box were delivered to Steamship Trucking, Inc. (hereinafter referred to as "the trucking company"), to be hauled to the defendant Railway Express Agency, Inc. (hereinafter referred to as "the agency"), for shipment to plaintiff's home in West Orange, New Jersey.
The pertinent facts are: Mrs. Herman stated that the contents of the trunks and box were in good condition when inspected by the customs officials, which was corroborated by her husband; that she wanted the trunks and box shipped to her home via the agency, but was informed that that company could not operate from the piers and that the articles must be handled through another shipper for that purpose. Accordingly, the Hermans turned the three pieces over to the trucking company, with instructions that the articles be insured and shipped via the agency. A receipt was given them by the trucking company and, in turn, a receipt was given to the trucking company by the agency. About a week after delivery, the box and trunks were opened and some of the merchandise was found to be damaged.
Plaintiffs' action for damages was instituted and tried on the theory that the trucking company was the initial carrier; that the agency was a connecting and the last carrier; that evidence having been given of their good condition at the time of delivery to the trucking company, a presumption arises that the injury resulted from the negligence of the last carrier. Defendant, at the end of the plaintiffs' case, moved for a judgment of dismissal on the ground that it was not a connecting carrier and there was no evidence of the condition of the merchandise when delivered to the defendant. The trial court denied defendant's motion for dismissal and granted plaintiffs' motion for a directed verdict in their favor on the ground that evidence of delivery to the trucking company, in good condition, was evidence of delivery of the merchandise in good condition to the defendant, and the merchandise having been delivered to plaintiffs' home in *14 damaged condition, a presumption of negligence militates against the defendant as terminal carrier.
The defendant grounds its appeal on the contentions that (1) there was error in the trial court's refusal to grant its motion for dismissal inasmuch as the evidence failed to establish the condition of the merchandise when it was delivered to defendant and that it was a connecting carrier; and that (2) the evidence did not justify a verdict by the court, but should have been submitted to the jury.
It is clear that there was testimony that the merchandise was not damaged when inspected by the customs officials. But, defendant says, there is no evidence as to the condition of the articles between that point and the delivery by the trucking company to the defendant, nor its condition on delivery to plaintiffs' home, except that one week thereafter, some of the contents thereof was found to be in a damaged condition. Defendant argues that the absence of such proofs preclude recovery by the plaintiffs.
The generally accepted rule respecting the presumption of liability of connecting carriers is that expressed in Gude v. Pennsylvania R.R. Co., 77 N.J.L. 391 (Sup. Ct. 1909), wherein it is stated:
"The rule undoubtedly is that the last of a line of connecting carriers is presumed, in the absence of proof to the contrary, to have received freight in the same condition in which it was delivered to the initial carrier, and if it appears to have been shipped in good order, and is in a damaged condition when the last carrier offers to deliver it, a presumption arises that the injury resulted from the negligence of the last carrier; but if there be no proof that the freight was in any other condition when it was delivered to either of the preceding carriers than as found in the hands of the last carrier, the presumption of negligence on the part of the final carrier does not arise."
The crux of the matter sub judice lays in the determination of the character of the employment of the trucking company and the defendant. Whether these companies were engaged for the performance of services as connecting carriers is *15 essential to a determination of the applicability of the aforementioned rule respecting presumed liability. "In its broadest sense the term `connecting carrier' means one of several common carriers whose lines or parts thereof united constitute the route over which a shipment is to pass, and which participate in the transportation of such shipment, a common carrier furnishing a necessary link in the transportation under a through bill of lading. It has been defined, however, as one whose route, not being the first one, lies somewhere between the point of shipment and the point of destination; it becomes such by virtue of the agreement between the consignor or shipper and the first carrier, whereby the latter undertakes to deliver the shipment at its ultimate destination, and thus makes the carrier beyond its own route its agent for continuing the transportation, or else undertakes only to deliver the goods safely to the next carrier on the route, who thus becomes agent for the shipper for carrying them further." 13 C.J.S., sec. 400, p. 882. The facts here do not indicate that the agency was engaged as connecting carrier in either the broadest terms of the definition or its narrower meaning. No through bill of lading was issued by the trucking company, but merely a receipt therefor issued to the plaintiffs. Furthermore, the trucking company did not agree to deliver the articles to their destination, but merely to deliver them to the defendant for transportation to plaintiffs' residence. "Although draymen may call themselves transfer companies, they are not ordinarily to be considered as connecting common carriers." 9 Am. Jur., Carriers, sec. 863, p. 963. The trial court erroneously applied the rule of presumed liability as to connecting carriers to the circumstances of this case. The evidence falls far short of establishing the defendant company as the terminal carrier.
Our review of the record fails to reveal any proof of the condition of the merchandise at the time it was turned over to the defendant company for delivery to plaintiffs' residence. As stated in Gude v. Pennsylvania R.R. Co., supra, at p. 394:
*16 "* * * There is no reason why goods may not be shipped although damaged, and without proof to the contrary, the presumption that they were, when shipped, in the condition found at their destination, is at least as strong as that they were not."
The only testimony is that of the plaintiffs, that they observed no damage to the merchandise at the point where the customs officials inspected it; that from there the trunks and wooden case were turned over to the trucking company for shipment by way of the agency and that the damage was not discovered until approximately one week after the articles had arrived at their destination.
On the question of damages, we think that a factual issue arose. The testimony as to the value of the merchandise and the damages is contradictory and confusing. There is testimony indicating that Mrs. Herman declared a value of $200 at the customs office, and a declared value of $500 was given to the agency, and claimed damages of $900. In the light of this testimony, conflicting inferences might well be drawn therefrom. When fair-minded men may honestly differ as to the conclusion to be reached from the evidence, controverted or uncontroverted, the case must be submitted to the jury. Dobrow v. Hertz, 125 N.J.L. 347 (E. & A. 1940); Shappell v. Apex Express, Inc., 131 N.J.L. 583 (E. & A. 1944).
Judgment reversed. The cause is remanded for a new trial. Costs to abide the event.