**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2701-18T2

HEATHER GENSINGER,

     Plaintiff-Appellant,

v.

IRIS REYES, CRAIG METZ,
STATE OF NEW JERSEY,
DEPARTMENT OF HUMAN
SERVICES, CAMELIA M.
VALDES, JAY W. MCCANN,
PASSAIC PROSECUTOR'S
OFFICE, and COUNTY OF
PASSAIC,

     Defendants-Respondents,

and

ADVOSERV OF
NEW JERSEY, INC.,

     Defendant.

_____

Submitted October 7, 2020 – Decided November 16, 2020

Before Judges Alvarez and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0125-16.

Cynthia Marie Collins, attorney for appellant (John V. McDermott, Jr., on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondents State of New Jersey, Iris Reyes, Craig Metz, Department Of Human Services, Camelia M. Valdes, Jay W. McCann, and Passaic County Prosecutor's Office (Melissa H. Raksa, Assistant Attorney General, of counsel; Michael R. Sarno, Deputy Attorney General, on the brief).

Paul J. Giblin, Jr., attorney for respondent County of Passaic, joins in the brief of respondent State of New Jersey.

PER CURIAM

Plaintiff Heather Gensinger was indicted for two counts of second-degree theft arising from her employment at Advoserv of New Jersey (Advoserv). Gensinger consequently filed a civil action under the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2, and the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, against defendants Iris Reyes, Craig Metz, State of New Jersey, Department of Human Services (DHS), Camelia M. Valdes, Jay W. McCann, Passaic County Prosecutor's Office, County of Passaic, and Advoserv. She also made claims of common law negligent training and supervision, false

arrest, malicious prosecution, false imprisonment, malicious abuse of prosecution, and civil conspiracy.

After a jury acquitted Gensinger, the motion court, in response to a Rule 4:6-2(e) motion, entered an order dismissing her action as to all defendants, including Passaic County, which did not file a motion to dismiss. We affirm the order – with the exception of Passaic County – because there was probable cause to indict Gensinger and, as a matter of law, her pleadings are insufficient to sustain her allegations. We reverse and remand as to Passaic County so that the court can issue a decision indicating why the claims against the county should be dismissed because it did not move for dismissal of Gensinger's complaint.

## I.

Gensinger's complaint reveals the following. In December 2008, Gensinger began employment with Advoserv,[1] believing she was hired as a "Fiscal Specialist" or "Fiscal Coordinator," by the company's Heather Moyer-Jopp. Moyer-Jopp told Gensinger that she would have to submit overtime hours each week to the corporate office in order to be paid her annual salary despite

---

[1] At oral argument before the motion court, it was stated that Advoserv contracted with DHS to manage group home facilities for developmentally challenged adults and was compensated through federal funding under DHS's oversight.

not actually working those hours. Gensinger complied, and Moyer-Jopp approved her fraudulent overtime requests each time they were submitted.

In 2009, Dawn Adler, an Advoserv corporate manager, became aware of Gensinger's fraudulent submissions and notified Darren Blough, the State Coordinator for the New Jersey offices and facilities of Adoserv, but neither Alder or Blough took any action; Gensinger continued to submit fraudulent overtime requests and receive her expected salary. In 2010, Gensinger learned from Adler that corporate records indicated Moyer-Jopp hired her as a "Community Living Specialist" at a lower annual salary than what she told Gensinger. When confronted by Adler concerning Gensinger's beliefs regarding her title and salary, Moyer-Jopp denied Gensinger's representations, indicating she would speak to Gensinger about the situation. Moyer-Jopp, however, did so, and Gensinger continued submitting fraudulent overtime requests and was paid her expected salary.

In an investigation unrelated to Gensinger's compensation, Advoserv concluded that between 2004 and 2012, Moyer-Jopp stole $227,699.89 from the company by being paid for fictitious purchases she allegedly made on behalf of Advoserv. Because Advoserv received a substantial amount of stolen funds

through its contracts with DHS, it informed the agency of their investigation results.

In response, DHS's police force began its own investigation headed by Reyes with assistance from Metz. Reyes' reports detailing witness interviews "listed only Moyer-Jopp as being the suspect . . . having committed [the] thefts. Not one of . . . [her] . . . reports ever stated [Gensinger] was involved in or responsible for, directly or indirectly, any of these thefts." In fact, neither Reyes nor Metz ever sought to speak with Gensinger.

In February 2014, Reyes filed a complaint-warrant in municipal court charging Gensinger with: (1) "falsif[ying] documents to show fraudulent transactions from [Advoserv service recipients] victims['] petty cash accounts and victims['] bank accounts for her personal monetary gain in the total of $92,714.30[;]" (2) "falsif[ying] [Advoserv] payroll documents in order to deceive by authorizing the submission of fraudulent time sheets in the total[] [of] $68,760.53[;]" and (3) "mak[ing] food purchases and credit card purchases to state fraudulent unauthorized transactions while [employed by Advoserv] in the total of $66,225.06."

Over a year later, Passaic County Assistant Prosecutor McCann, with Reyes as the State's witness, presented the allegations against Gensinger to a

grand jury. Gensinger was indicted on two counts of second-degree theft by deception, alleging:

> on or about 2009 until on or about August 2012 . . . [she] did purposely obtain the property greater than $75,000 of another; namely grant monies for the benefit of certain disabled individuals under the care of [DHS], by creating or reinforcing a false impression that said funds were being used for their benefit when in fact the funds were converted to her own use . . . .

Prior to her criminal trial, Gensinger filed a civil action against defendants on February 29, 2016, and amended it for the first time on April 11, arising from her indictment.[2] The action was stayed pending resolution of her criminal charge. Gensinger unsuccessfully sought on two occasions to dismiss the indictment based on lack of probable cause.

On October 27, 2017, a jury found Gensinger not guilty of all charges. Thereafter, her civil action was reinstated, and she was allowed to file a second amended complaint (herein after "complaint" or "pleadings") suing:

- Reyes for violation of the NJCRA, TCA, and New Jersey Constitution, and civil conspiracy;

- Metz for violation of the NJCRA, TCA, and New Jersey Constitution;

- DHS for violation of the TCA and negligent supervision;

---

[2] The record does not include copies other than the initial and first amended complaint.

- Valdes for violation of the NJCRA and TCA, and common law negligent training and negligent supervision;

- McCann for violation of the NJCRA, TCA, and New Jersey Constitution, and civil conspiracy;

- The Prosecutor's Office for violation of the NJCRA and TCA, and common law negligent training and negligent supervision; and

- Passaic County for violation of the NJCRA and TCA, and common law negligent training and negligent supervision.

Additionally, Gensinger sued all defendants for malicious prosecution, false arrest, false imprisonment, deprivation of liberty, invasion of privacy, intentional infliction of emotional distress, and malicious abuse of process.

Defendants, except for Passaic County, filed a Rule 4:6-2(e) motion to dismiss Gensinger's complaint for failure to state claims upon which relief could be granted. After considering the parties' submissions and oral argument, the court granted the motion for reasons explained in a twenty-page statement attached to its order. Recognizing Gensinger's concessions, the court dismissed all claims against Valdes due to her absolute immunity as a prosecutor, and NJCRA claims against DHS and the Prosecutor's Office, because they are not persons under the NJCRA. Plaintiff also conceded Reyes, Metz, and McCann are not subject to liability under the NJCRA in their official capacities, thus those claims were dismissed. As for McCann, the court dismissed TCA,

NJCRA, and state constitutional claims against him because of his absolute immunity as a prosecutor. As for Reyes and Metz, the court dismissed claims against them under the NJCRA in their individual capacities due to qualified immunity, and under the TCA due to absolute immunity. The court dismissed the claim of civil conspiracy against Reyes and McCann because of insufficient allegations in the complaint.

With respect to all defendants, claims of intentional infliction of emotional distress, malicious abuse of process, false arrest, false imprisonment, deprivation of liberty, invasion of privacy, common law negligent training, and negligent supervision were dismissed because of insufficient allegations in the complaint.

The court's order dismissed Gensinger's complaint with prejudice as to all parties, including Passaic County, which did not file a motion to dismiss.

II.

Appellate review of a trial court's ruling on a motion to dismiss is de novo. Watson v. New Jersey Dep't of Treasury, 453 N.J. Super. 42, 47 (App. Div. 2017) (citing Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div 2016)). Since our "review is plenary[,] . . . we owe no deference to the trial judge's conclusions." State ex rel. Comm'r of Transp. v. Cherry Hill Mitsubishi, Inc.,

439 N.J. Super. 462, 467 (App. Div. 2015) (citation omitted). In considering a motion under <u>Rule</u> 4:6-2(e), courts must accept the facts asserted in the complaint and should accord the plaintiff all favorable inferences. <u>Watson</u>, 453 N.J. Super. at 47. "A complaint should be dismissed for failure to state a claim pursuant to <u>Rule</u> 4:6-2(e) only if 'the factual allegations are palpably insufficient to support a claim upon which relief can be granted.'" <u>Frederick v. Smith</u>, 416 N.J. Super. 594, 597 (App. Div. 2010) (quoting <u>Rieder v. State Dep't of Transp.</u>, 221 N.J. Super. 547, 552 (App. Div. 1987)). Our inquiry "'is limited to examining the legal sufficiency of the facts alleged on the face of the complaint.'" <u>Green v. Morgan Prop.</u>, 215 N.J. 431, 451 (2013) (quoting <u>Printing Mart-Morristown v. Sharp Elecs. Corp.</u>, 116 N.J. 739, 746 (1989)). Therefore, the pleading must be "search[ed] . . . 'in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim . . .'" <u>Ibid.</u> (quoting <u>Di Cristofaro v. Laurel Grove Mem'l Park</u>, 43 N.J. Super. 244, 252 (App. Div. 1957)).

For the reasons set forth below, we conclude the motion court properly applied the standards of <u>Rule</u> 4:6-2(e) in dismissing Gensinger's complaint as to all defendants except Passaic County.

A.

NJCRA Claims

The NJCRA in pertinent part states:

> <u>Any person who has been deprived of</u> . . . <u>any substantive rights</u>, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion <u>by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief</u>.
>
> [N.J.S.A. 10:6-2(c) (emphasis added).]

Thus, the NJCRA provides a cause of action to any person who has been deprived of any rights under either the federal or state constitutions by a "person" acting under color of law. Ibid. The NJCRA, modeled after the Federal Civil Rights Act, 42 U.S.C. § 1983, affords "a remedy for the violation of substantive rights found in our State Constitution and laws." Brown v. State, 442 N.J. Super. 406, 425 (App. Div. 2015) (quoting Tumpson v. Farina, 218 N.J. 450, 474 (2014)). The NJCRA has been interpreted by our Supreme Court to be analogous to § 1983; thus, our courts apply federal law's immunity doctrines to claims arising under the NJCRA. Perez v. Zagami, LLC, 218 N.J. 202, 213-15 (2014); Gormley v. Wood-El, 218 N.J. 72, 113-15 (2014).

A-2701-18T2

Prosecutors are absolutely immune from Section 1983 claims for their actions associated with the "judicial phase of the criminal process" and, thus, are shielded from liability for any wrongdoing allegedly committed while acting as an advocate for the State. Imbler v. Pachtman, 424 U.S. 409, 431 (1976) (by "initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983"); Yarris v. Cnty. of Del., 465 F.3d 129, 137 (3d Cir. 2006).

Absolute immunity extends to a prosecutor's decision to initiate a prosecution, any acts taken in preparation for initiation of the case, and presentation of the State's case. Yarris, 465 F.3d at 135 (citation omitted). The decision to prosecute is absolutely protected "even where [the prosecutor] acts without a good faith belief that any wrongdoing has occurred." Kulwicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992). Courts have reasoned that a falsely-charged defendant has other remedies available including probable cause hearings, motions to dismiss, as well as the State's rules for professional responsibility. Ibid. Acts taken in preparation include the evaluation of evidence collected by investigators and the failure to conduct an adequate investigation before filing charges. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); see also Kulwicki, 969 F.2d at 1465. Relevant to this appeal, courts

11

have held prosecutors are absolutely immune from civil suit for failing to disclose exculpatory evidence prior to trial and for using false testimony in connection with a prosecution (both while functioning in their prosecutorial capacity). Yarris, 465 F.3d at 137, 139.

### 1. McCann

Gensinger argues that her NJCRA pleadings against McCann assert he prosecuted her despite knowing there was no legal or factual basis to do so and failed to provide exculpatory evidence to the grand jury or to her counsel prior to the criminal trial. Gensinger's contentions do not overcome his absolute immunity as a prosecutor. Her pleadings do not assert that McCann ever functioned in an administrative or investigative role, which would not afford him absolute immunity. Her argument that McCann withheld exculpatory evidence and allegedly using false testimony before the grand jury is also protected because it was in his capacity as a prosecutor. Therefore, the court properly dismissed Gensinger's claims that McCann violated her rights under the NJCRA and our state constitution.

### 2. Reyes and Metz

Police officers who mistakenly arrest someone are normally afforded the affirmative defense of qualified immunity to shield themselves "from personal

liability for discretionary actions taken in the course of their public responsibilities." Brown v. State, 230 N.J. 84, 97-98 (2017). Therefore, an officer accused of false arrest can assert qualified immunity to an NJCRA claim if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 98 (quoting Morillo v. Torres, 222 N.J. 104, 116 (2015)). Said another way, "a law enforcement officer can defend such a claim by establishing either that he or she acted with probable cause, or, even if probable cause did not exist, that a reasonable police officer could have believed in its existence.'" Morillo, 222 N.J. at 118-19 (2015) (quoting Kirk v. City of Newark, 109 N.J. 173, 184 (1988)). Accordingly, "probable cause is an absolute defense to . . . [claims for] malicious prosecution [and . . .] Section 1983 claims." Wildoner v. Borough of Ramsey, 162 N.J. 375, 389 (2000).

"[O]ur jurisprudence has held consistently that a principal component of the probable cause standard 'is a well-grounded suspicion that a crime has been or is being committed.'" State v. Moore, 181 N.J. 40, 45 (2004) (quoting State v. Nishina, 175 N.J. 502, 515 (2003)); accord Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995) (applying the same standard). "Probable cause exists where the facts and circumstances within . . . [the officers'] knowledge

and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." Moore, 181 N.J. at 46 (quoting Schneider v. Simonini, 163 N.J. 336, 361 (2000) (first and second alterations in original)). "[A] grand jury indictment is prima facie evidence of probable cause to prosecute." Helmy v. City of Jersey City, 178 N.J. 183, 191 (2003) (citations omitted).

Gensinger contends on appeal the record is incomplete and she should be allowed to prove her pleadings. We disagree. We are satisfied Reyes and Metz had probable cause to arrest and file a complaint-warrant against Gensinger alleging she took funds belonging to Advoserv's clients by submitting fraudulent timesheets. Her admission that she submitted fraudulent overtime requests would make a reasonable police officer believe probable cause existed. Her explanation that her supervisor directed and approved her submissions thereby giving her "apparent authority" is not a legal defense to the criminal charge of theft by deception. Gensinger cites no case law in support.

Moreover, Gensinger's unsuccessful efforts to dismiss the charges due to lack of probable cause prior to the favorable jury verdict demonstrate Reyes and Metz had reason to believe she committed a crime of theft by deception.

Gensinger is estopped from relitigating the issue.  See Tarus v. Borough of Pine Hill, 189 N.J. 497, 521 (2007) ("We conclude that plaintiff is estopped from relitigating his contention that defendants lacked probable cause for arrest because that issue was 'actually determined in a prior action'") (quoting State v. Gonzalez, 75 N.J. 181, 186 (1977)).  Therefore, Reyes and Metz are protected under qualified immunity and the NJCRA claims against them were correctly dismissed.

B.

TCA Claims

Under the TCA, "[a] public employee is not liable if he [or she] acts in good faith in the execution or enforcement of any law[,]" but "[n]othing in this section exonerates a public employee from liability for false arrest or false imprisonment."  N.J.S.A. 59:3-3.  The TCA also extends immunity to a public employee "for injury caused by his [or her] instituting or prosecuting any judicial or administrative proceeding within the scope of his [or her] employment."  N.J.S.A. 59:3-8.  However, nothing in the TCA will "exonerate a public employee from liability if it is established that his [or her] conduct was outside the scope of his [or her] employment or constituted a crime, actual fraud, actual malice or willful misconduct."  N.J.S.A. 59:3-14(a).

A-2701-18T2

Our Supreme Court has instructed how the good faith standard is met. In Alston v. City of Camden, 168 N.J. 170, 186 (2001), the Court held "[a] public employee either must demonstrate 'objective reasonableness' or that he [or she] behaved with 'subjective good faith.'" (quoting Fielder v. Stonack, 141 N.J. 101, 132 (1995)). "The burden of proof is upon the employee, who must prove either of those components in order for the good faith immunity to attach." Toto v. Ensuar, 196 N.J. 134, 146 (2008) (citing Alston, 168 N.J. at 186).

Gensinger argues that she proved there was no probable cause that she committed theft by deception, and that despite the lack of probable cause, Reyes, Metz, and McCann willfully pursued the charges against her. Her complaint asserts no facts supporting her allegations that Reyes, Metz, or McCann committed acts of fraud, malice, or willful misconduct. Her allegations depict the three individual defendants acting within the scope of their employment. Because there was evidence invalidating the charges against her, Gensinger implies they could have only been acting with malice. However, her failure to assert specific malicious acts warrants dismissal of her TCA claims. See Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982) (holding "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery"). There is no basis in law to read

16

into her pleadings causes of action that are not pled. See Bombace v. City of Newark, 125 N.J. 361, 372 (1991) (recognizing the TCA is to "reestablish a system in which immunity is the rule, and liability the exception"). Moreover, as noted above, ample probable cause existed. Accordingly, the TCA claims against Reyes, Metz, Valdes, McCann, DHS, and the Prosecutor's Office were properly dismissed.

## C.

### Intentional Infliction of Emotional Distress Claims

To prove intentional infliction of emotional distress, a plaintiff must show:

> (1) defendant acted intentionally; (2) defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community;" (3) defendant's actions proximately caused him [or her] emotional distress; and (4) the emotional distress was "so severe that no reasonable [person] could be expected to endure it."
>
> [Segal v. Lynch, 413 N.J. Super. 171, 191 (App. Div. 2010) (second alteration in original) (quoting Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988)).]

We have described the second required element "as an 'elevated threshold' that is satisfied only in extreme cases." Ingraham v. Ortho-McNeil Pharm., 422

N.J. Super. 12, 21 (App. Div. 2011) (quoting Griffin v. Tops Appliance City, Inc., 337 N.J. Super. 15, 23 (App. Div. 2001)). "A court determines whether outrageous conduct could possibly be found as a matter of law based on the facts, while a jury determines if in fact that conduct was outrageous." G.D. v. Kenny, 411 N.J. Super. 176, 194 (App. Div. 2009) (citing Taylor v. Metzger, 152 N.J. 490, 509-10 (1998)); see also Buckley v. Trenton, 111 N.J. at 367.

We conclude, as the motion judge did, that Gensinger failed to plead defendants committed the requisite extreme and outrageous conduct to support a claim of intentional infliction of emotional distress. Simply alleging defendants prosecuted her is insufficient; it does not satisfy the "extreme and outrageous" standard. And, as mentioned, there was probable cause for Reyes, Metz and McCann to determine Gensinger committed a crime and prosecute her based on their respective conclusions. Therefore, it was correct to dismiss Gensinger's intentional infliction of emotional distress claims against them.

D.

Malicious Abuse of Process

We have recognized:

> The gist of the tort of malicious abuse of process is not commencing an action without justification . . . . [I]t is the misuse, or "misapplying process justified in itself for an end other than that which it was designed to

accomplish. The purpose for which process is used, once it is issued, is the only thing of importance."

[Baglini v. Lauletta, 338 N.J. Super. 282, 293 (App. Div. 2001) (quoting Prosser & Keaton on Torts § 121 at 897 (5th ed. 1984)).]

"[B]asic to [a cause of action for] malicious abuse of process is the requirement that the [party] perform 'further acts' after the issuance of process 'which represent the perversion or abuse of the legitimate purposes of that process.'" Id. at 294 (quoting Penwag Prop. Co., Inc. v. Landau, 148 N.J. Super. 493, 499 (App. Div. 1997), aff'd, 76 N.J. 595 (1978)). Further acts that may constitute malicious abuse of process may include ". . . arrest of the person and criminal prosecution [.]" Ibid. (quoting Prosser & Keeton on Torts, § 121 at 899 (footnotes omitted)).

Gensinger argues her pleadings establish defendants abused their powers by instituting and prosecuting theft charges against her. We disagree. Gensinger's complaint does not allege further acts of misuse of process beyond merely asserting there was an abuse of the grand jury process. She posits no claim indicating defendants' ulterior abusive purpose for prosecuting her especially considering she admitted submitting fraudulent overtime. Because the complaint failed to assert a claim for malicious abuse of process as a matter of law, the claim was properly dismissed.

E.

Civil Conspiracy

Our Supreme Court described a civil conspiracy as

> a combination of two or more persons acting in concert
> to commit an unlawful act, or to commit a lawful act by
> unlawful means, the principal element of which is an
> agreement between the parties to inflict a wrong against
> or injury upon another, and an overt act that results in
> damage.
>
> [Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177
> (2005) (quoting Morgan v. Union Cty. Bd. of Chosen
> Freeholders, 268 N.J. Super. 337, 364 (App. Div.
> 1993)).]

In order to establish conspiracy, one must show "'a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences.'" Morgan, 268 N.J. Super. at 365 (alteration in original) (quoting Hampton v. Hanrahan, 600 F.2d 600, 621 (7th Cir. 1979), rev'd in part on other grounds, Hanrahan v. Hampton, 446 U.S. 754 (1980)). Accordingly, a civil conspiracy exists where the purported conspirator understood "the general objectives of the scheme, accept[ed] them, and agree[d], either explicitly or implicitly, to do [their] part to further them." Banco Popular N. Am., 184 N.J. at 177 (quoting Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988)). Notably, the "gist of the claim is not the unlawful agreement,

20

'but the underlying wrong which, absent the conspiracy, would give a right of action.'" Id. at 177-78 (quoting Morgan, 268 N.J. Super. at 364).

Gensinger's complaint asserts Reyes and McCann unlawfully agreed to pursue charges against her when there was no evidence to support them. However, her complaint is devoid of any factual allegations suggesting Reyes and McCann conspired against her. It is insufficient to merely assert that they knew she committed no wrongdoing and yet agreed to prosecute charges against her. Thus, the claim was properly dismissed.

## III.

The motion court's order that "[p]laintiff's [c]omplaint is dismissed with prejudice," together with its written decision that claims against the county are dismissed, suggests that dismissal of the complaint was also granted in the county's favor. However, Passaic County did not file a motion to dismiss Gensinger's complaint, and the court failed to mention why it was taking such sua sponte action. See Trautwein v. Bozzo, 39 N.J. Super. 267, 268 (App. Div. 1956) (holding trial courts are permitted to invoke the doctrine sua sponte to further the interests of justice and public policy). Hence, we remand for the court to set forth its reasons for taking such action. See R. 1:7-4(a) (providing "[t]he court shall, by an opinion or memorandum decision, either written or oral,

21

find the facts and state its conclusions of law thereon . . . on every motion decided by a written order that is appealable as of right").

Affirmed in part and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2701-18T2